Arthur J. DIXON, et al., Plaintiffs,

v.

Isadore SHAFTON, et al., Appellants,

and

Kenneth BIGUS, Respondent,

v.

Walter LEINHARDT, Third-Party Defendant.

No. 63923.

Supreme Court of Missouri, En Banc.

April 26, 1983.

Roy Bash, Randall C. Werntz, Samuel J. Molby, Kansas City, for appellants.

Theodore J. Furry, Robert A. Schroeder, Lawrence W. Bigus, Kansas City, for respondent.

RENDLEN, Chief Justice.

This case originated as a suit by Dixon and Aeder, partners in Carlton Green Associates, against Shafton, Turek, Epstein, Lieberman and Bigus, partners in Granada Associates, on a contract claim. The four first named Granada partners cross-claimed against Bigus, who, in addition to being a partner, is a practicing attorney in Kansas City and acted as the attorney for the Granada partners in the transaction with Carlton. The cross-claim charged that Bigus had committed legal malpractice in regard to this contract by advising the other Granada partners to sign it even though it contained a clause (the inserted clause) requiring Granada to pay contingent accruals of interest and taxes, the amount of which would depend on when the final closing of certain parts of the transaction could be arranged.

The plaintiffs sued for $160,161.50 plus interest. This claim was settled for $135,000 with the settlement leaving the cross-claiming appellants free to pursue their cross-claim against Bigus, and without Bigus having waived any defenses he would otherwise have had. Bigus then filed a motion for summary judgment which the trial court sustained. An expanded seven-member panel of the Court of Appeals—Western District affirmed by a vote for four to three. Judge Pritchard, author of the dissenting opinion, ordered the case transferred here because he believed that the opinion was in conflict with *Hunter v. Hunter,* 361 Mo. 799, 237 S.W.2d 100 (Mo. 1951) and *De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Co.,* 539 S.W.2d 542 (Mo.App.1976). We decide the case as an original appeal.[1]

---

1. We see no conflict in these cases. *Hunter v. Hunter,* 361 Mo. 799, 237 S.W.2d 100 (Mo. 1951), applied the 10-year statute of limitations. *De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Co.,* 539 S.W.2d 542 (Mo.App.1976), said that an order at the Public Service Commission was a condition precedent to a suit for telephone overcharges, and that the Statute of Limitations did not commence until the order was issued.

The motion for summary judgment was accompanied by suggestions. Bigus filed an affidavit stating that the facts set forth in "statement of facts" in his suggestions were true "according to his best knowledge and belief." The appellants then filed suggestions in opposition containing a statement of facts and Shafton, one of the appellants, likewise filed an affidavit stating that the facts there stated were true "according to his best knowledge and belief." Shafton also filed an additional affidavit with a similar reservation. These affidavits leave much to be desired, and their compliance with Rule 74.04(e) is marginal at best. A statement that something is true "according to his best knowledge and belief" is an equivocation. Inasmuch as neither party made a point of these deficiencies, and inasmuch as the court of appeals felt that the issues were squarely presented, we shall not hold the affidavits to be insufficient. Our duty is to determine whether Bigus has "shown by unassailable proof" that he is entitled to judgment "as a matter of law." We determine that the following facts were established by the appropriate degree of proof:

1. The Carlton-Granada agreement was signed on August 3, 1971. It contained the clause in question. The presence of this clause was unknown to Bigus, who did not read the final version of the contract before signing it, before executing it for another partner through power of attorney, and before recommending that the remaining Granada partners sign it.

2. Bigus first learned of the inserted clause on January 19, 1973 when the plaintiffs first disclosed a claim for additional revenues at the January 12, 1973 closing. Bigus immediately disclosed the existence of the clause to the other Granada partners and recommended that Granada retain counsel. On February 14, 1973 Granada retained the firm of Rogers, Field, Gentry, Benjamin and Robertson to represent their interest.

3. The appellants and Bigus entered into negotiation with Carlton and took the position that the inserted clause had been inserted into the contract through mistake or fraud, and was not binding on the Granada partners.

4. The Carlton partners filed suit in New York in October of 1975 against the Granada partners.

5. The present action was filed October 25, 1977 by the Carlton partners against the Granada partners.

6. The cross claim of the appellants against Bigus was filed on May 1, 1978.

7. The appellants and Bigus filed pleadings raising issues of fraud and mistake in opposition to the plaintiffs' claim.

The trial court held that the appropriate statute of limitations was § 516.120 RSMo 1978, imposing a limitation of five years. This conclusion does not appear to be questioned. The trial judge held that the period of the statute commenced running when the contract was signed on August 3, 1971, or in any event at the latest on January 19, 1973, which was the date performance of the obligation apparently created by the inserted clause was due. The appellants argued that the statute did not begin to run until November 1975, which was the day the plaintiffs first filed suit in New York asserting a claim under the inserted clause.

The appellants rely on § 516.100 RSMo 1978, which in pertinent parts is as follows:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided,

There apparently was no limitation on the time for applying to the Commission. Further, proof as to the rate scale assignment process and related activity was in the exclusive control of the utility company. It was necessary that the rate assignment dispute be first resolved by the Public Service Commission before a cause of action accrued. However, the Court noted that a customer who had knowledge of a utility company's wrong doing (as did plaintiff here) and failed to act on that information, could be barred in his claim.

that for the purposes of sections 516.100 to 516.370, *the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.* (Emphasis supplied.)

The appellants argue, vigorously, that no damage was sustained until the plaintiffs filed suit on the obligation arising under the inserted clause, which was in October of 1975. They say that damages were not "capable of ascertainment" until this suit was filed and that, in particular, one item of damages, consisting of taxes on the property that had been sold, could not have been ascertained within five years of the date of filing of the cross claim on May 1, 1978. They also argue that Bigus was "estopped from pleading the statute of limitations on the claim against him," because, after new counsel were retained by the Granada partners, he consistently took the position that the disputed claim was not a part of the Carlton-Granada contract.

We conclude that the record before us establishes that the statute of limitations commenced running no later than February 14, 1973. This is the date on which the appellants, after Bigus notified them of his mistake, retained independent counsel. We do not have to decide, then, whether the statute commenced running at the time Bigus made his mistake. On February 14, 1973, the appellants knew that a substantial claim existed as to them. They had suffered some damage, at least to the extent that they had to hire new counsel who would have otherwise been unnecessary. They also realized they could avoid liability, if at all, only with the expenditure of even more substantial amounts for attorney's fees.

Section 516.100 was adopted in its present form in 1919 and has been construed on numerous occasions since that time. The word "ascertain" has always been read as referring to the fact of damage, rather than to the precise amount. The point is illustrated by *Allison v. Missouri Power and Light Co.*, 59 S.W.2d 771 (Mo.App.1933). The plaintiff there was struck with an iron bar in 1926 and realized he had suffered some injury at that time, but he claimed that he did not realize that his injuries were serious and disabling until 1929. The court held, nonetheless, that the five year statute began to run in 1926, so that a suit filed in 1932 was barred. The opinion held that the legal injury was complete when the accident occurred, even though the full extent of the damages could not then be determined.

*Allison* has been cited by this Court with approval in *Chemical Workers Basic Union, Local No. 1744 v. Arnold Savings Bank*, 411 S.W.2d 159, 164 (Mo. banc 1966). *See also Rippe v. Sutter*, 292 S.W.2d 86, 90 (Mo. 1956); *Gruenewaelder v. Wintermann*, 360 S.W.2d 678, 690 (Mo.1962). *Thorne v. Johnson*, 483 S.W.2d 658 (Mo.App.1972), cited by the appellee, might be read as being critical of *Allison*, but it reaches a result that is consistent with our conclusion. There an abstract company had omitted a deed of a one half interest from an abstract certified in 1957. The court held that the five-year statute did not begin to run until 1968, when the grantee in the omitted deed commenced suit to protect his interest. The significant circumstance, however, was that the purchasers did not discover the problem until 1968. The only reasonable means of discovering the omission was through the abstract company. The opinion indicated that, if discovery had been made earlier, the statute might have commenced to run earlier. *Thorne* might be authority that here the period of the statute did commence in 1971, when the mistake was made, but is not authority for any claim that the statute did not begin to run after the appellants knew of the act of malpractice and took steps to protect themselves by obtaining other counsel.

Our latest pronouncement in this area is *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. banc 1977). There plaintiff consulted a lawyer

who advised him that he had no defense to pending charges of Selective Service violations. He then pleaded guilty and was sentenced to prison, being released on parole in March of 1969. It then appeared that he had had a possible defense, and in February of 1975 the Federal court expunged his conviction. In August of 1975 he filed suit against the attorney for malpractice. We sustained a dismissal based on the five-year statute of limitations, holding that the statute began to run when the plaintiff was released on parole. (The statute was suspended while he was incarcerated.) It is clear that the full amount of plaintiff's damages could not be determined at the time he was released, inasmuch as it was then assumed that his conviction was valid. The subsequent vacation of his conviction was a very significant circumstance in determining what damages could be recovered. This Court held, nevertheless, that he was in a position to protect his rights as soon as he was released from prison, and that the statute of limitations began to run at that time.

What has been said disposes of the appellants' second point, in which it was argued that the taxes could not be ascertained any time during the year 1973. The parties knew that, if the inserted clause were to stand, some taxes would be due. It has never been a requirement of the law that the precise amount be determinable.

In many actions the extent of damage may be dependent on uncertain future events. A personal injury plaintiff might be awaiting an operation which might substantially affect the extent of liability. If a lawyer overlooks the statute of limitations in filing his suit, there may be no certainty that the suit, if filed, would be successful or of the amount which might be recovered. Such uncertainties have never been held to preclude the filing of suit and, under the authorities cited above, have not delayed the accrual of the plaintiff's claim for purposes of the statute of limitations. The most that is required is that some damages have been sustained, so that the claimants know that they have a claim for some amount. These requirements were met in the case at bar.

The appellants also argue that Bigus was "estopped" to plead the statute of limitations because he took the position that the questioned clause was not properly in the contract, and joined the appellants in asserting that position when the plaintiffs filed suit. The argument is not sufficient. When all the facts are known a court will seldom find that a party is estopped to plead the statute of limitations, unless he has made positive efforts to avoid the bringing of suit against him, or unless he has in some way misled the claimants. The appellants have had the opportunity to develop these matters fully by affidavit and have furnished nothing of substance. The uncontradicted record shows that, after February 14, 1973, they were aware of the facts and were represented by competent counsel fully capable of protecting their rights. It was only good sense for Bigus and the appellants to join together in resisting the plaintiffs' claim. The facts stated do not self support an estoppel against Bigus and, indeed, the cases cited in support of this claim contain only general language, and in none was an actual estoppel to plead the statute of limitations found.[2]

The appellants argue that they were not in a position to protect their rights against Bigus until they were sued by the plaintiffs. We now have freedom of joinder of parties, declaratory judgment, long-arm service, and other devices for the bringing of all interested persons into a lawsuit. Without expressing a conclusion as to the obligation of appellants to make use of any or all of these expedients, we simply point out that the appellants were not so helpless as they now claim. As we have said earlier, the fact that all possible damages were not known, or even knowable, on February 14, 1973 does not prevent the accrual of the claim nor the running of the statute.

**2.** *Sugent v. Arnold's Estate,* 340 Mo. 603, 101 S.W.2d 715 (Mo.1937); *Martin v. Potashnick,* 358 Mo. 833, 217 S.W.2d 379 (Mo.1949); *Nick-* erson v. Whalen, 253 S.W.2d 502 (Mo.App. 1952); and *Cacioppo v. Southwestern Bell Telephone Co.,* 550 S.W.2d 919 (Mo.App.1977).

Our courts have applied statutes of limitations with some strictness, and exceptions and estoppels have been rather grudgingly found. See *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. banc 1977). Summary dispositions should only be endorsed when the facts are clear but such dispositions are often quite appropriate in statute of limitations cases because the underlying facts are relatively easy to develop. *See Devault v. Truman*, 354 Mo. 1193, 194 S.W.2d 29 (Mo. 1946). We conclude that the record shows without contradiction the trial court was correct in determining that appellants were in a position to assert and protect their rights at all times after February 14, 1973, and that their cross-claim, filed May 1, 1978, was barred by the five-year statute of limitations, See § 516.120, RSMo.

The judgment is affirmed.

HIGGINS, GUNN, DONNELLY, JJ., SEILER, Senior Judge, and WASSERSTROM, Special Judge, concur.

WELLIVER, J., dissents.

BILLINGS and BLACKMAR, JJ., not participating because not members of Court when cause was submitted.