James F. KOESTER; Robert Rives; Harry J. Nichols; Janice Spengel; Alexander Loeb; Thomas Zensen; Frank B. Green; Dr. Gerald Newport; Lawrence J. Siefel; Robert E. Perkinson; Dr. James R. Criscione; Dr. A. Sciortino; Eugene Fahrenkrog; Eugene Fahrenkrog, Jr.; Scott Kell; William Londoff; John Larsen; Spero Bourdoures; Fox, Goldblatt & Singer, P.C.; Noah Susman; Steve Gilmore; Robert Evans; Dr. Jacques Paul Schaerer; William Curren; Virginia Curren; Patricia Baxter; Lester A. Schamel; Dr. Alan Pierce; Bernie Plouch; Jerry Kopp; Donna J. Hill; Phillip Sweeney; Dr. Ronald Hertel; Joseph Straub; Dr. John Keethler, Plaintiffs–Appellees,

v.

AMERICAN REPUBLIC INVESTMENTS, INC.; American Resource Corporation, Inc.; Ronald Ruis; Tatco Investment Co., Defendants,

G. Charles Cole; Sherman Mazur, also known as Masur, Defendants–Appellants.

Nos. 92–3370, 92–3381.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1993.

Decided Dec. 14, 1993.

Rehearing Denied Jan. 21, 1994.

Matthew Hale, Kansas City, MO, argued (George L. Fitzsimmon, St. Louis, MO, and David A. Welte and Matthew R. Hale, Kansas City, MO, on the brief), for defendant-appellant G. Charles Cole.

Timothy Nicholas Vujnich, St. Louis, MO, argued for defendant-appellant Sherman Mazur.

Mark Goodman, Clayton, MO, argued, for plaintiffs-appellees.

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

LOKEN, Circuit Judge.

This diversity case arose from the ashes of an all too common financial disaster. Plaintiffs are St. Louis professionals who invested some $9,000,000 in real estate limited partnerships in the late 1970's and early 1980's, primarily for tax sheltering purposes. In hindsight, the properties were wildly overpriced. The projects were eventually sold or foreclosed, leaving plaintiffs with large investment losses. They sued the general partners and insiders for breach of their fiduciary duties. Two of those insiders, defendants G. Charles Cole and Sherman Mazur, appeal jury verdicts awarding the various plaintiffs a total of $6,400,000 in compensatory damages and $4,800,000 in punitive damages. We reverse the judgments against Cole because plaintiffs' claims against him are time barred. We reverse the awards of punitive damages but affirm the awards of compensatory damages against Mazur.

## I.

The parties' relationships began in 1978, when Cole and his colleague, Ron West, traveled to St. Louis and made a presentation regarding their real estate syndication efforts to an investor group that included some of these plaintiffs. Over the next few years, plaintiffs invested as limited partners in thirteen "investment level" partnerships. Though each plaintiff invested individually, and is suing individually in this lawsuit, plaintiff Harry J. Nichols, a St. Louis attorney, performed many services for the limited partner investors as a group, including review of Confidential Investment Memoranda, partnership agreements, and real estate documents, and day-to-day communication with the general partners and property managers. The syndicators paid Nichols $477,000 in fees or commissions for these efforts.

The investment level partnerships reinvested plaintiffs' money in numerous "project level" limited partnerships. These partnerships acquired and managed commercial real estate properties and "passed through" to plaintiffs tax deductions greatly exceeding their investments (though some of these aggressive deductions were eventually disallowed following I.R.S. audits). Typically, a corporation owned by Cole was the general partner of the project level partnerships.

Cole was touted to the investors as a property management expert, and he personally managed the properties owned by the project partnerships until mid-to-late 1981. In 1979 and 1980, Cole was investigated by the Securities and Exchange Commission. He entered into a consent agreement with the agency in April 1981 that curtailed his activities.[1] Later that year, without advising the limited partner investors, Cole sold his interests in the general partner entities to Ronald Ruis, Cole's former employee. Ruis and his corporation, defendant American Republic Investments, Inc., became co-general partners of the investment level partnerships. Though Nichols had previously communicated hundreds of times with Cole about the partnership investments, after 1981 Nichols dealt solely with Ruis and his company.

After Cole's departure, the general partner of the project level partnerships was defendant Tatco Investments, Inc. Mazur acquired all the stock of Tatco in November 1982, and plaintiffs were told that Mazur would personally assume responsibility for managing the properties. The partnership investments fared badly, and plaintiffs finally commenced this action for breach of fiduciary duty and fraud in May 1987. In October 1987, a project in which plaintiffs had invested over $2,000,000 was foreclosed; Tatco and Mazur did not advise the limited partner

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Though this decree is a public record, it was not offered into evidence at trial, and we do not know its terms and conditions.

investors until the day before the foreclosure sale.

In December 1991, Mazur was indicted by a federal grand jury in California. The district court denied Mazur's motion to stay this action and permitted plaintiffs to take Mazur's deposition on the eve of the June 1992 trial. At the deposition, Mazur broadly invoked his Fifth Amendment privilege against self-incrimination. When Mazur did not attend the trial, plaintiffs read this deposition to the jury.

█ Just prior to trial, Cole moved to dismiss on statute of limitations grounds. Trial commenced without a ruling on this motion. Cole requested that the statute of limitations defense be submitted to the jury, but the district court ruled that it was an issue for the court.[2] After the jury verdict in favor of plaintiffs, the court denied Cole's statute of limitations motion without explanation.

Only plaintiffs' breach of fiduciary duty claims were submitted to the jury. Plaintiffs claimed that Cole wrongfully sold partnership properties without plaintiffs' consent, allowed property foreclosures, and "walked away" from his management responsibilities despite the syndicators' initial representations that Cole personally would manage the properties. Plaintiffs claimed that Mazur wrongfully sold partnership properties without accounting for the proceeds to the limited partners, and gave the limited partner investors insufficient notice of the October 1987 foreclosure sale. The jury found that both Cole and Mazur had breached their fiduciary duties, awarding plaintiffs $3,235,287 in compensatory damages and half that amount in punitive damages against Cole, and $3,209,840 in compensatory damages and an equal amount in punitive damages against Mazur.

## II.

█ On appeal, Cole argues that any breaches of fiduciary duty occurred at or

before his withdrawal from management of the partnerships in 1981, and therefore plaintiffs' May 1987 action is barred by the five year statute of limitations in Mo.Rev.Stat. § 516.120. A claim for breach of fiduciary duty is governed by the five-year statute of limitations found in § 516.120(4). *See Lehning v. Bornhop*, 859 S.W.2d 271, 273 (Mo. App.1993). For most claims, "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." § 516.100. However, a claim for relief "on the ground of fraud" accrues, not when the resulting damage is capable of ascertainment, but when the facts constituting the fraud are discovered. *See* § 516.120(5); *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990); *Nerman v. Alexander Grant & Co.*, 926 F.2d 717, 721 (8th Cir.1991).

█ Under the capable-of-ascertainment test, a cause of action accrues when "the injury to plaintiff was complete as a legal injury." *Chemical Workers*, 411 S.W.2d at 165. "The most that is required is that some damages have been sustained, so that the claimants know that they have a claim for some amount." *Dixon v. Shafton*, 649 S.W.2d 435, 439 (Mo. banc 1983). Under the fraud discovery standard, the cause of action accrues when plaintiff has "sufficient facts to inform a reasonable person that a fraud has been committed." *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 755 (Mo.App. 1990).

█ Not surprisingly, plaintiffs contend that the fraud standard applies, while Cole argues for the ascertainment standard. There is support for both positions. *Compare Lehnig*, 859 S.W.2d at 273; *with Vogel*, 801 S.W.2d at 754–55. In this case, although plaintiffs' complaint was replete with allega-

---

**2.** This ruling was contrary to our decision in *Lear v. Equitable Life Assur. Soc'y*, 798 F.2d 1128, 1133 (8th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1001 (1987). Numerous Missouri cases have held or implied that statute of limitations questions are for the jury. *See Swope v. Printz*, 468 S.W.2d 34, 42 (Mo.

1971); *Chemical Workers Basic Union v. Arnold Sav. Bank*, 411 S.W.2d 159, 165 (Mo. banc 1966); *Osborn v. Orthopaedic Ass'n*, 844 S.W.2d 36 (Mo. App.1992). However, since we conclude that plaintiffs' claims are time-barred as a matter of law, no new trial is necessary on this issue.

tions of fraud by Cole, their case was submitted to the jury on the issue of whether Cole breached a fiduciary duty "to deal fairly and honestly" with the limited partners. That is not a claim "grounded in fraud," and we therefore doubt whether the Supreme Court of Missouri, which has not addressed this issue, would apply the discovery rule of accrual. But in any event, on these facts we conclude that plaintiffs' claims against Cole are time-barred under either standard.

In a sixty-nine page brief, plaintiffs devote less than three pages to this question. They assert in conclusory fashion that they "first discovered some of the claims no earlier than 1985," and alternatively that their damages were "capable of ascertainment no earlier than 1987." The linchpin of plaintiffs' case against Cole is the charge that he walked away from his management duties when he secretly sold his partnership interests to Ruis in 1981. But it is undisputed that, by the end of 1981, plaintiffs knew that Cole was no longer actively managing the properties. Plaintiffs' examination of Cole included the following:

> Q. ... Did you write the investors a letter, close to that time, the first quarter of 1981, where you told them that you were withdrawing, and that you could not raise additional monies in the marketplace by virtue of an SEC consent that you signed, did you do that?
>
> A. I probably did that, yes, sir.[3]

Moreover, Nichols admitted receiving a letter from Ruis stating that management of the project partnerships was being taken over by his company, and in April 1982, Nichols wrote several other investors advising that he would communicate their concerns directly with Ruis. And on May 27, 1986, plaintiff Donna Hill wrote Nichols and several other plaintiffs expressing her displeasure that they had decided in 1981 not to file suit.

On these undisputed facts, we conclude that plaintiffs' "secret withdrawal" claim is time-barred. If the secret withdrawal was fraudulent vis-a-vis plaintiffs, they clearly discovered that Cole had withdrawn well before May 1982. If the ascertainment standard applies, plaintiffs suffered some damage the minute the partnerships were deprived of Cole's managerial skills. Plaintiffs' suggestion that Cole is liable under this theory for all their investment losses after he departed defies common sense and is unavailing for statute of limitations purposes.

Having concluded that plaintiffs' principal claim against Cole is time-barred, their other claims require little discussion. Plaintiffs claimed that Cole sold partnership properties without their consent prior to his withdrawal. But plaintiffs were clearly aware of such sales—in March 1980, plaintiff James Koester exacted a written promise from Cole not to sell properties without Koester's prior approval. And any damage to plaintiffs from such sales would have been immediately ascertainable. Similarly, plaintiffs claimed that Cole wrongfully allowed property foreclosures, but Nichols was aware of the only foreclosure that occurred during Cole's tenure as manager, and any damages resulting from that transaction would have been immediately ascertainable.

For the foregoing reasons, we conclude that plaintiffs' claims against Cole are time-barred by the five year statute of limitations as a matter of law. We therefore reverse the judgments against Cole without reaching the numerous other issues he has raised on appeal.

### III.

Mazur raises twelve issues on appeal, most of which require little or no discussion. Despite the convoluted way in which the parties structured their affairs, and despite

---

3. The letter referred to is not in the record on appeal and was apparently not introduced at trial. The question as phrased and answered by Cole is an admission that his April 1981 letter advised investors that he was "withdrawing." If the letter said something different, plaintiffs had the burden to put it in evidence. In Missouri, plaintiff has the burden of proving facts that justify tolling the statute of limitations. *See* *Swope,* 468 S.W.2d at 42; *Kauchick v. Williams,* 435 S.W.2d 342, 349 (Mo. banc 1968). Because it applies statutes of limitations "with some strictness," *Dixon,* 649 S.W.2d at 440, we think the Supreme Court of Missouri would place the burden on plaintiffs to prove that the statute of limitations was tolled under § 516.100 because their damages were not capable of ascertainment.

plaintiffs' persistent disregard for the crucial distinction between breach of contractual duties and breach of fiduciary duties, we conclude that there was sufficient evidence to permit the jury to find that Mazur breached personal fiduciary duties to plaintiffs when he failed to account to the limited partners for the proceeds of property sales, and when he failed to give the limited partners adequate notice of an impending foreclosure. *See Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 905 (Mo. banc 1990); *Schroer v. Schroer,* 248 S.W.2d 617 (Mo. 1952); *Ebest v. Bruce,* 734 S.W.2d 915, 921–22 (Mo.App.1987); *Zelch v. Ahlemeyer,* 592 S.W.2d 482, 485 (Mo.App.1979). Mazur's contention that the district court erred in instructing the jury on the elements of a claim for breach of fiduciary duty is without merit.

Mazur further contends that the district court abused its discretion in denying his motion for stay based upon his criminal indictment, and in allowing plaintiffs to take and use his deposition after he advised the court that defense of the criminal action would preclude him from attending the trial. We disagree. A stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted. *See Wehling v. Columbia Broadcasting Sys.,* 608 F.2d 1084 (5th Cir.1979). However, a civil defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege. Therefore, to warrant a stay, defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, *see Anglada v. Sprague,* 822 F.2d 1035, 1036–37 (11th Cir.1987), or that the two trials will so overlap that effective defense of both is impossible. Mazur made no such showing here. The district court was within its discretion in concluding that its long-scheduled trial of this multi-party case should go forward and that plaintiffs were entitled to take Mazur's deposition and use it at trial.

However, Mazur's challenge to the punitive damages award is well founded. Although there was sufficient evidence to support the jury's findings that Mazur's breaches of fiduciary duty caused plaintiffs $3,209,840 in compensatory damages, we conclude that the award of punitive damages cannot be upheld. Under Missouri law, punitive damages may be awarded for a breach of fiduciary duty "where the wrongful acts were perpetrated in a willful, wanton or malicious manner." *McKeehan v. Wittels,* 508 S.W.2d 277, 284 (Mo.App.1974) (award of punitives upheld where "defendants deliberately ignored plaintiff's instructions so that their own financial positions would be enhanced," *id.* at 281). *See also Moon v. Tower Grove Bank & Trust Co.,* 691 S.W.2d 399, 401 (Mo. App.1985) ("some element of bad motive" required). Moreover, because Missouri law allows punitive damages only for tortious wrongdoing, "[t]he fiduciary duty must exist separately from and and independently of contractual obligations." *Peterson,* 783 S.W.2d at 905.

Plaintiffs argue that the facts establishing Mazur's breaches of fiduciary duty are sufficient to support an award of punitive damages—after representing that he would personally manage the partnership properties, Mazur sold apartment buildings in California without accounting for or distributing the sale proceeds to plaintiffs, and failed to provide them with notice of a foreclosure sale until one business day before the sale. But none of these actions is inherently reflective of bad motive or legal malice—they are not *malum in se.* Unlike the proof in *McKeehan,* plaintiffs do not contend that Mazur engaged in self dealing or misappropriated partnership funds in connection with the sale and foreclosure transactions in question. Plaintiffs' argument reduces to the proposition that any breach of fiduciary duty warrants an award of punitive damages. As *Peterson* makes clear, Missouri law is to the contrary.

There is, of course, another significant element in this case—Mazur failed to attend the trial and invoked the Fifth Amendment privilege in his deposition. In closing argument, plaintiffs referred to Mazur's claim of the privilege thirteen times and to his absence from the trial another fourteen times. Although an adverse inference may be drawn against a party who invokes the

Fifth Amendment privilege and refuses to testify in a civil proceeding, that silence alone is insufficient to support an adverse decision. *See Baxter v. Palmigiano,* 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); *Pagel, Inc. v. S.E.C.,* 803 F.2d 942, 946–47 (8th Cir.1986). The government may not punish assertion of the constitutional privilege against self-incrimination. *Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). Given the total absence of other evidence of bad motive or legal malice, we can only conclude that the punitive damage awards in this case reflect nothing more than punishment for Mazur's decision to invoke his Fifth Amendment privilege rather than defend himself at trial.

We have considered Mazur's other arguments on appeal and conclude they are without merit. The judgments of the district court are reversed and the cases are remanded with directions to enter amended judgments that dismiss plaintiffs' claims against G. Charles Cole and eliminate any award of punitive damages against Sherman Mazur.