Linda S. NETTLES, Appellant,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a New York Corporation, Appellee.

No. 94–3337.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1995.

Decided June 5, 1995.

Ronald K. Barker, Kansas City, MO, argued, for appellant.

John J. Yates, Kansas City, MO, argued (Janet L. Chleborad, on the brief), for appellee.

Before WOLLMAN, Circuit Judge,
FLOYD R. GIBSON, Senior Circuit Judge,
and MURPHY, Circuit Judge.

WOLLMAN, Circuit Judge.

Linda S. Nettles brought this action against her former employer, American Telephone and Telegraph Company (AT & T), alleging claims of promissory estoppel and fraudulent misrepresentation. Applying the Missouri borrowing statute, the district court[1] found that Nettles' claims were untimely under the applicable statute of limitations and granted summary judgment in favor of AT & T. We affirm.

## I.

Nettles was employed by AT & T in its Maitland, Florida, office from June 1987 to October 1988. In July 1988, AT & T instituted a Strategic Force Redeployment Career Opportunity Program (the "Program"). The stated purpose of the Program was to strengthen the company's sales staff by providing additional training to management level employees and redeploying them in various sales positions throughout the country.

On August 9, 1988, Nettles applied for a position under the Program and requested that she be relocated to one of three offices in California. According to Nettles' complaint, AT & T orally promised her that a position would be available in Oakland, California, for a person with her qualifications. AT & T made certain other representations to Nettles concerning salary and benefits, job duties, training, and performance evaluation, all of which she relied on in seeking relocation. On September 12, 1988, AT & T selected Nettles to participate in the Program and assigned her to its branch office in Oakland. The relocation became effective on October 2, 1988.

Nettles alleges that after relocating to Oakland, she discovered in October 1989 that the representations made by AT & T concerning the Program were false and that AT & T had redeployed far more people to California than there were jobs available. Thus, she claims, the position promised her by AT & T was not available, and she was reassigned to a pool of excess redeployed employees. Nettles alleges that as a result, she was forced to relocate in February 1990 to a lower paid and lower management level position in AT & T's office in Kansas City, Missouri.

Nettles claims that she continued to work in the Kansas City office until she was placed on disability leave in March 1992. She alleges that as a result of her experience with AT & T and the Program, she has suffered damages, including the costs associated with relocating from Florida to California and from California to Missouri. She further alleges that she has suffered, and continues to suffer, from depression and severe emotional distress, resulting in her total employment disability. Beginning in 1992, Nettles received treatment from a psychiatrist and a psychologist, both of whom diagnosed Nettles as being disabled due at least in part to the relocation. Finally, Nettles alleges that AT & T forced her to take disability retirement in March 1993 because her health prohibited her from returning to work on a full-time basis.

In August 1993, Nettles sued AT & T in Missouri state court, asserting claims of promissory estoppel and fraudulent misrepresentation. AT & T removed the case to federal court and promptly moved for summary judgment, claiming that Nettles' complaint was untimely under the applicable statute of limitations. The district court granted the motion. It held that under Mo. Rev.Stat. § 516.190 (1986), Nettles' claims originated in California no later than October 1989, the date on which Nettles discovered the alleged fraud and AT & T's failure to comply with its representations concerning the redeployment. Applying California's three-year statute of limitations, the district court held that Nettles' suit was untimely. This appeal followed.

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

## II.

■ We review a grant of summary judgment *de novo,* applying the same standards employed by the district court. *Sperry v. Bauermeister, Inc.,* 4 F.3d 596, 597 (8th Cir.1993); Fed.R.Civ.P. 56(c). We will affirm the grant of summary judgment if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no dispute of material fact and that the moving party is entitled to judgment as a matter of law. *McIlheran v. Lincoln National Life Insurance Co.,* 31 F.3d 709, 710 (8th Cir. 1994). Because this is a diversity case, the district court's interpretation of state law is also subject to *de novo* review. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

Nettles argues that the district court erred in finding that the Missouri borrowing statute operates to require application of California law to determine the timeliness of her claims. She contends that Missouri's five-year statute of limitations for actions based on breach of contract and fraud, Mo.Rev. Stat. § 516.120 (1986), applies in this case and that because her complaint was filed within the requisite five-year period, it was not untimely.

■ A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945). "Missouri, the forum, considers statutes of limitations issues procedural, and, therefore, governed by Missouri law." *Renfroe v. Eli Lilly & Co.,* 686 F.2d 642, 646 (8th Cir.1982). Missouri law allows for a five-year period to bring actions for fraud or breach of an oral contract. Mo.Rev.Stat. § 516.120. To determine the appropriate statute of limitations, however, section 516.120 must be read in conjunction with Mo.Rev.Stat. § 516.190, Missouri's borrowing statute, which provides:

> Whenever a cause of action has been fully barred by the laws of the state ... in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

■ Under section 516.190, when a cause of action originates in a state other than Missouri and that state's statute of limitations bars the action as untimely, the borrowing statute operates to adopt the foreign state's statute, thereby barring the action in Missouri as well. *Renfroe,* 686 F.2d at 646. "The purpose of [the] borrowing statute is primarily to prevent a plaintiff from forum shopping for a statute of limitations. The statute prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued." *Patch v. Playboy Enterprises, Inc.,* 652 F.2d 754, 756 (8th Cir.1981) (per curiam). The critical issue, then, in applying section 516.190 is determining where a cause of action originated.

The term "originated," as used in section 516.190, "has been construed to mean 'accrued.'" *Thompson v. Crawford,* 833 S.W.2d 868, 871 (Mo.1992) (en banc); *see also, e.g., Dorris v. McClanahan,* 725 S.W.2d 870, 871 (Mo.1987) (en banc).

Mo.Rev.Stat. § 516.100 (1986) provides that

> for the purposes of section 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

■ Under the capable-of-ascertainment test set forth in section 516.100, "a cause of action accrues when 'the injury to plaintiff was complete as a legal injury.'" *Koester v. American Republic Investments, Inc.,* 11 F.3d 818, 821 (8th Cir.1994) (quoting *Chemical Workers Basic Union v. Arnold Sav. Bank,* 411 S.W.2d 159, 165 (Mo.1966) (en banc)). The damage must be actually sustained and capable of ascertainment before the right to sue arises and the statute of limitations begins to run. *Business Men's Assurance Co. of America v. Graham,* 891 S.W.2d 438, 445 (Mo.Ct.App.1994). " 'The most that is required is that some damages have been sustained, so that the claimants

know that they have a claim for some amount.'" *Koester,* 11 F.3d at 821 (quoting *Dixon v. Shafton,* 649 S.W.2d 435, 439 (Mo. 1983) (en banc)); *see also Renfroe,* 686 F.2d at 647. Section 516.100 determines not only when a claim accrues but also where it originates for purposes of considering the effect of the borrowing statute. *Renfroe,* 686 F.2d at 647 n. 9.

Nettles argues that the resolution of this case lies in the interpretation of section 516.100. Under her theory, although some damage may have been sustained and become capable of ascertainment when she discovered in October 1989 that AT & T had breached its promise of employment in California, the last item of damage—that is, her severe emotional distress and depression and resulting disability—did not occur until she was diagnosed in 1993 as suffering from those conditions. Therefore, her theory goes, because this last item of damage was not sustained and capable of ascertainment until she had returned to Missouri, the cause of action accrued and therefore originated in Missouri.

 Nettles' theory rests on the assumption that damages resulting from a single wrong that develop and become more serious over time constitute separate items of damage. The Missouri courts have declined to give to the term "item of damage" the broad interpretation that Nettles argues for here. Section 516.100 "does not change the general rule that 'when an injury is complete as a legal injury at the time of the act, the period of limitation will at once commence.'" *Rippe v. Sutter,* 292 S.W.2d 86, 90 (Mo.1956) (quoting *Allison v. Missouri Power & Light Co.,* 59 S.W.2d 771, 773 (Mo.Ct.App.1933)). Moreover, aggravating circumstances that enhance a legal injury already inflicted and the mere development of such an injury do not delay the accrual of a cause of action. *Allison,* 59 S.W.2d at 773; *see also Dixon,* 649 S.W.2d at 438–39; *Rippe,* 292 S.W.2d at 90; *Arst v. Max Barken, Inc.,* 655 S.W.2d 845, 847 (Mo.Ct.App.1983).

In *Allison,* the plaintiff was accidentally struck in the face by a steel bar in 1926. He argued that although he was aware of at least some damage at the time the injury occurred, the serious and disabling nature of his injuries were separate items of damage that were not ascertainable until those conditions were diagnosed some three years later in 1929. Thus, the plaintiff maintained that his suit filed in 1932 was timely under the applicable five-year limitation period. The court found, however, that aggravating circumstances arising from a single legal injury do not constitute separate items of damage under section 516.100. 59 S.W.2d at 773. Although the full extent of the plaintiff's damages was not ascertainable in 1926, the court held that the legal injury was complete at the time of the accident and that his claim was therefore untimely. *Id.*

The reasoning in *Allison* has been consistently cited with approval by the Missouri courts. *See, e.g., Dixon,* 649 S.W.2d at 438 (citing cases). After rejecting a similar item-of-damage argument in *Dixon,* the Missouri Supreme Court stated:

> It has never been a requirement of the law that the precise amount [of damages] be determinable.... In many actions the extent of damage may be dependent on uncertain future events. A personal injury plaintiff might be awaiting an operation which might substantially affect the extent of liability. If a lawyer overlooks the statute of limitations in filing his suit, there may be no certainty that the suit, if filed, would be successful or of the amount which might be recovered. Such uncertainties have never been held to preclude the filing of suit and ... have not delayed the accrual of the plaintiff's claim for purposes of the statute of limitations.

649 S.W.2d at 439.

 In this case, Nettles' promissory estoppel claim is essentially an action for breach of an oral contract. *See, e.g., In re Jamison's Estate,* 202 S.W.2d 879, 886 (Mo. 1947). In an action for breach of contract, "ordinarily a plaintiff's cause of action accrues upon a defendant's failure to do the thing at the time and in the manner contracted, and a statute of limitation begins to run when a suit may be maintained therefor." *Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 555 (Mo.1980) (en banc) (quotation omitted).

There is no dispute that the alleged breach of the promise of employment by AT & T occurred in California in October 1989. Nettles concedes that at least some damage was sustained and capable of ascertainment at that time in the form of the loss of the job she expected to obtain and the costs and expenses she incurred in moving to California. Consequently, Nettles' injury was complete as a legal injury in October 1989. This is not a case involving a contract calling for repeated performances over time, with individual breaches resulting in separate items of damage. *See, e.g., Reed v. Rope,* 817 S.W.2d 503 (Mo.Ct.App.1991); *Sabine v. Leonard,* 322 S.W.2d 831 (Mo.1959). Rather, Nettles alleges a single breach, from which all damages have flowed. Although the full extent and character of her emotional distress and disability may not have been known in 1989, "all such matters, sometimes broadly referred to as items of damage, ... were after all but aggravating circumstances enhancing the legal injury already inflicted, and constituting mere developments of such an injury, and were not of a character to delay the accrual of the cause of action." *Allison,* 59 S.W.2d at 773. Accordingly, Nettles' promissory estoppel claim accrued and therefore originated in California in October 1989.

Nettles also relies on our decision in *Renfroe,* 686 F.2d at 642. In *Renfroe,* we dealt with an unusual situation involving persons who were unaware of the cause of their slowly developing physical injuries at the time those injuries were sustained and capable of ascertainment. We recognized in that case the unfairness of concluding that "a plaintiff's claim accrued as soon as any physical injury manifested itself, because of the possibility that the plaintiff might not be able to know the likely cause of the injury at that time." *Id.* at 647. Given those circumstances, we declined to disturb the district court's conclusion that "Missouri courts would not bar a cause of action for slowly developing injuries caused by a drug because the plaintiff learned too late the cause of her injuries, especially where plaintiff learned of that cause as soon as her doctor did." *Id.* at 648 (quotation omitted). That is not the situation in this case. Nettles' suit does not involve a plaintiff who was unaware of the cause of her injury. Thus, we conclude that this case does present the unique circumstances that existed in *Renfroe. See Specialty Restaurants Corp. v. Bucher,* 967 F.2d 1179, 1182–83 (8th Cir.1992).

Nettles' reliance on the Missouri Supreme Court's decision in *Davis* is also misplaced. In *Davis,* the court held that the defendant's actions in continuing to supply natural gas delivered through a defective gas meter constituted a continuing tort, thereby permitting recovery for damages sustained during the five years preceding the commencement of the action. 603 S.W.2d at 556. In this case, however, there is no allegation of a continuing tort. Nettles alleges only a single wrongful act. Therefore, "this case does not present the 'peculiar and particular circumstances' wherein 'the wrong may be said to continue from day to day, and to create a fresh injury from day to day.'" *See Lato v. Concord Homes, Inc.,* 659 S.W.2d 593, 595 (Mo.Ct.App.1983) (quoting *Davis,* 603 S.W.2d at 556).

■ Having concluded that Nettles' promissory estoppel claim originated in California, we must next determine whether that claim is timely under California law. California provides for a two-year statute of limitations for actions based on an oral contract. Cal.C.C.P.Code § 339 (West 1995); *Kurokawa v. Blum,* 199 Cal.App.3d 976, 989, 245 Cal.Rptr. 463, 470 (1988). Any cause of action Nettles may have had accrued in October 1989. *See Kurokawa,* 199 Cal.App.3d at 989, 245 Cal.Rptr. at 470. Accordingly, the district court properly found that Nettles' promissory estoppel claim was untimely under California law and, therefore, by operation of Missouri's borrowing statute, likewise barred under Missouri law.

■ Nettles makes the same argument with respect to section 516.100 to determine where the fraud claim originated. "'An action for relief on the ground of fraud, however, accrues—not when the resulting damage is capable of ascertainment—but when the facts constituting the fraud are discovered.'" *Nerman v. Alexander Grant & Co.,* 926 F.2d 717, 721 (8th Cir.1991) (quoting *Schwartz v. Lawson,* 797 S.W.2d 828, 832

(Mo.Ct.App.1990)); *see also Koester*, 11 F.3d at 821. The governing limitation provision for determining when a fraud claim accrues is Mo.Rev.Stat. § 516.120(5), not section 516.100. *Nerman*, 926 F.2d at 721; *Koester*, 11 F.3d at 821. "Under the fraud discovery standard, the cause of action accrues when [the] plaintiff has 'sufficient facts to inform a reasonable person that a fraud has been committed.'" *Koester*, 11 F.3d at 821 (quoting *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 755 (Mo.Ct.App.1990)). Here, there is no dispute that Nettles actually discovered the fraud in California in October 1989. Accordingly, Nettles' fraud claim, like her promissory estoppel claim, originated in California.

We again look to California law to determine if Nettles' fraud claim was untimely. In California, "[a]n action for fraud must be commenced within three years of the discovery of the facts constituting the fraud." *Kurokawa*, 199 Cal.App.3d at 989, 245 Cal. Rptr. at 471; *see also* Cal.C.C.P.Code § 338(d) (West 1995). Because Nettles' claim was not filed within three years of October 1989, it is barred under California and Missouri law.

We recognize that the accrual of a cause of action may at times conflict with the ability of plaintiffs to realize the full extent of their damages before commencing a lawsuit to recover for those damages. As a federal court exercising diversity jurisdiction, however, we do not write on a clean slate, and "we are not free to fashion rules of law from whole cloth." *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1310 (8th Cir.1993). Rather, we are bound to follow applicable state law as reflected in the decisions of the state courts. *Id.* Missouri law in this case dictates that the accumulating nature of Nettles' damages did not serve to delay the accrual of her claims for purposes of determining the appropriate statute of limitations under the borrowing statute.

The judgment is affirmed.