**In re Claire E. KRAMER, Debtor.**

**Estate of Claire E. Kramer, Deceased, Plaintiff,**

v.

**Claire E. Kramer, Defendant.**

**Bankruptcy No. 04–23311–MBM. Adversary No. 04–2763–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 22, 2004.

Dai Rosenblum, Butler, PA, for Debtor.

Jeffrey J. Sikirica, Gibsonia, PA, trustee.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **22nd day** of **November, 2004,** upon consideration of (a) the adversary complaint filed by the Estate of Claire E. Kramer, the deceased mother of Claire E. Kramer, the instant debtor (hereafter "the Estate"), wherein the Estate seeks a determination that its claim against the instant debtor (hereafter "the Debtor") for money belonging to the Es-

tate that the Debtor improperly obtained prior to, or improperly retained subsequent to, the death of her mother (hereafter "the Funds") is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (b) the Debtor's answer, (c) the Estate's Group Exhibits 1 and 2, which exhibits include, *inter alia*, (i) the Debtor's mother's Last Will and Testament, dated July 8, 1999 (hereafter "the Will"), (ii) a Durable General Power of Attorney, dated July 18, 2000, allegedly executed by the Debtor's mother in favor of the Debtor and her sister (hereafter "the Power of Attorney"), and (iii) a consent order entered by the Pennsylvania Court of Common Pleas for Allegheny County, dated February 25, 2003, which order settled the Estate's claim against the Debtor for $6,500 conditioned upon the Debtor's payment of such amount in accordance with the terms of such consent order (hereafter "the Consent Order"), and (d) the Transcript of the Deposition of Joshua B. Goldman, DO, a physician who treated the Debtor's mother in the period shortly prior to her death (hereafter "the Doctor");

and after notice and a trial held on November 15, 2004, at which trial the Debtor failed to appear notwithstanding that (a) the Court's final pre-trial order entered in the instant adversary proceeding, entitled Trial Order and Notice and dated August 19, 2004, notified both parties that the date and time of such trial was to be November 15, 2004, at 10:30 a.m. (hereafter "the Scheduling Order"), (b) she is listed as a witness to be called to testify in not only her own Pre–Trial Statement but that of the Estate as well, (c) her counsel appeared at such trial, and (d) the Court allowed for at least roughly one hour for the Debtor to appear past 10:30 a.m., during which time the Court asked questions of the parties' counsel and such counsel spoke regarding issues relevant to the instant adversary proceeding;

and the Estate having requested at trial leave to amend its adversary complaint to plead 11 U.S.C. § 523(a)(4) as a statutory basis for its nondischargeability action, which request (a) was affirmatively not objected to by the Debtor, and (b) shall thus be granted by the Court,

it is hereby **ORDERED, ADJUDGED, AND DECREED** that

(a) the Estate's claim is **NONDISCHARGEABLE** under both § 523(a)(2)(A) and § 523(a)(4); and

(b) **JUDGMENT** is, accordingly, entered **in favor of the Estate** and **against the Debtor** in the instant adversary proceeding.

The Court's rationale for ruling as it does, which is relatively straightforward, is set forth below.

### I.

At the outset, the Court holds that, if it were so inclined, the Court could enter a default judgment against the Debtor for her failure to attend the November 15, 2004 trial given that (a) it was the stated intent of the Estate to examine her at such trial, and (b) the Scheduling Order notified the Debtor of the time and place for such trial. *See* Fed.R.Civ.P. 16(f), 28 U.S.C.A. (West 1992) (made applicable by Fed. R.Bankr.P. 7016) (authorizing sanctions for a party's failure to obey a scheduling order, such as, among others, those provided for in Fed.R.Civ.P. 37(b)(2)(C), which rule authorizes the entry of a default judgment against the disobedient party); *In re Walters,* 176 B.R. 835, 876–877 (Bankr. N.D.Ind.1994) (citing to not only Fed. R.Civ.P. 16(f) but also the Court's "inherent power to invoke sanctions for conduct which abuses the judicial process" as authority for the entry of a default judgment). However, as was the case in *Walters,* "the Court declines to invoke such a

draconian sanction in this case . . . [, deciding instead that] it is better that these proceedings be submitted and decided on the merits." *Walters*, 176 B.R. at 877.

Having determined that the instant matter should be decided on the merits, the Court nevertheless also holds that, given that the instant matter is civil in nature, the Court is free to draw adverse inferences from the Debtor's absence and corresponding failure to testify at trial provided that it finds that the Estate produced probative evidence at trial against the interest of the Debtor. *See, e.g., LiButti v. United States*, 107 F.3d 110, 121 (2nd Cir. 1997); *Koester v. American Republic Investments, Inc.*, 11 F.3d 818, 823–824 (8th Cir.1993); *St. Paul Fire & Marine Insurance Company v. Royal Insurance Company of America*, 1993 WL 267347 at *1 (S.D.N.Y.1993). As set forth below, the Court identifies strong probative evidence that was produced against the Debtor sufficient to warrant the drawing of adverse inferences from the Debtor's failure to testify at trial.

## II.

The Estate asserts that its claim against the Debtor for the Funds—which claim has been conditionally settled for $6,500—should be declared nondischargeable under (a) § 523(a)(2)(A) because the Funds were obtained by the Debtor from her mother by way of the Power of Attorney, which document, the Estate asserts, was invalid in part (that is, with respect to the grant of gift-making authority therein) if not entirely on the basis that the Debtor obtained the same by way of actual fraud, and (b) § 523(a)(4) because the Funds were (i) obtained by the Debtor as the result of fraud or defalcation while the Debtor acted in a fiduciary capacity, to wit the Debtor exercised the Power of Attorney in her own best interest rather than with the best interest of her mother in mind, (ii) stolen by the Debtor, which assertion has potential merit if the Power of Attorney was invalid in its entirety, and/or (iii) embezzled by the Debtor, which assertion has potential merit if the Power of Attorney was valid but the gift-making authority contained therein was invalid (i.e., fraudulently obtained). The Debtor defends against the foregoing by arguing that (a) the Power of Attorney was valid and that it was not obtained by fraudulent means, (b) the Power of Attorney allowed for gifts to be made by those exercising such power, that is the Debtor and her sister, and that such gift-making authority was not the result of fraud, (c) her sister rather than herself actually took the action to obtain the Funds via the Power of Attorney, and that it was then her sister solely who proceeded to distribute the Funds—i.e., her sister was the only one of the two that actually exercised the Power of Attorney notwithstanding that it was granted to both of them, and (d) even if the Power of Attorney was invalid or the distribution of the Funds was an inappropriate exercise of such power, she nevertheless thought, in good faith, that such power was valid and the distribution of the Funds by her sister was appropriate.

"Actual fraud[, which is actionable under § 523(a)(2)(A)], by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 4 *Collier on Bankruptcy* ¶ 523.08[1][e] at 523–45 (Bender 2004). "[S]ection 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place un-

lawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement." *Id.* at ¶ 523.10[2] at 523–77.

In support of its contention that the Debtor obtained the Power of Attorney or, at a minimum, the gift-making authority contained therein—and, thus, the Funds as well—by actual fraud, the Estate produced at trial uncontroverted evidence to establish the following relevant facts:

(a) that the Will did not provide for any bequest or devise of property by the Debtor's mother to her children, and that the Debtor's mother directed on page 1 of the Will "that no friend or family member [may] deal with my property [subsequent to my death] in any way except with the explicit permission and informed approval of my Executor"—the foregoing facts are entirely inconsistent with the grant of a power of attorney to two of the Debtor's mother's children, with specific power contained therein to make gifts to, among others, such children and their other siblings;

(b) that the Power of Attorney was executed on July 18, 2000, which date is less than one month before the date when the Debtor's mother died;

(c) that the Debtor and her sister emptied their mother's safe deposit box on precisely the same date that the Power of Attorney was executed—i.e., July 18, 2000;

(d) that the Debtor's mother's two bank accounts containing the Funds were liquidated via the Power of Attorney within approximately two weeks of the date of execution of the Power of Attorney;

(e) that it was at least the opinion of the Doctor, if it was not indeed a fact, that the Debtor's mother was capable of neither (i) reading the Power of Attorney on July 18, 2000, when the same was supposedly executed by her, nor (ii) placing, with the firmness indicated on the second page of the Power of Attorney, an "X" in the box that corresponds to language that granted to the Debtor and her sister as powers of attorney the authority to make gifts to themselves and their other siblings.

The foregoing facts and the evidence to establish the same are certainly probative of the proposition that the Debtor obtained the Power of Attorney or, at a minimum, the gift-making authority contained therein by actual fraud. In fact, the Court holds that such facts and evidence are sufficiently probative such that the Court must infer from the Debtor's failure to testify at trial that, had she truthfully testified at trial, she would have admitted either that (a) the Power of Attorney was invalid in its entirety for having been obtained by fraudulent means that she participated in, or (b) the grant of authority within the Power of Attorney to make gifts to herself and her other siblings was the result of actual fraud on her part.

In light of the foregoing factual findings and the adverse inferences to be drawn from the Debtor's failure to testify at trial, the Court must hold that the Estate has proven, by the requisite preponderance of the evidence, *see* 4 *Collier on Bankruptcy* ¶ 523.04 at 523–19 to 523–20 (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), for the proposition that the standard of proof in any nondischargeability action is proof by a preponderance of the evidence), that the Debtor obtained the Funds by means of actual fraud and either stole or embezzled the same as well. Accordingly, the Estate's claim against the Debtor for the Funds, which claim has been conditionally liquidated and reduced to the Consent Order in

the amount of $6,500, shall be declared nondischargeable pursuant to both § 523(a)(2)(A) and § 523(a)(4).

### III.

 In ruling as the Court does, the Court rejects outright the suggestion by the Debtor that, for purposes of nondischargeability, it matters not what the underlying nature of the Estate's claim was, that is whether such claim was for fraud, larceny, embezzlement, etc., but rather only whether the agreement between the Debtor and the Estate that culminated in the Consent Order was the result of fraud. The Court so rules because, as a matter of law, a debt for money promised in a settlement agreement or in a stipulation that is embodied in a consent decree, which settlement or stipulation settles and releases a creditor's prior state law claim against a Chapter 7 debtor for money obtained by fraud, can amount to a debt for money obtained by fraud within the meaning of § 523(a)(2)(A), *see Archer v. Warner,* 538 U.S. 314, 316–323, 123 S.Ct. 1462, 1465–1468, 155 L.Ed.2d 454 (2003) (citing as controlling the decision in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)); such holding can properly be extended, this Court finds, to other types of claims such as, for instance, claims for larceny or embezzlement. Therefore, and in light of the Court's analysis set forth in part II. above, the Debtor's debt of $6,500 promised to the Estate in the stipulation that is embodied in the Consent Order, which consent order settled and conditionally released the Estate's claim against the Debtor for the Funds, amounts to a nondischargeable debt for (a) money obtained by fraud within the meaning of § 523(a)(2)(A), and (b) either larceny or embezzlement within the meaning of § 523(a)(4).

### IV.

**IN SUMMARY,** (a) the Estate's claim is **NONDISCHARGEABLE** under both § 523(a)(2)(A) and § 523(a)(4), and (b) **JUDGMENT** is, accordingly, entered **in favor of the Estate** and **against the Debtor** in the instant adversary proceeding.