**William B. RUHLING and Gwendolyn S. Ruhling, Respondents,**

v.

**ROBERT DAWES CONSTRUCTION COMPANY and Robert P. Dawes and Mary E. Dawes, Appellants.**

**No. WD 31040.**

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Richard T. Cole, Raytown, for appellants.

James S. Cottingham, Independence, for respondents; Campbell, Gilmore, Erickson, Cottingham, Morgan & Gibson, Independence, of counsel.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

Respondents, on October 20, 1976, filed their first amended petition for damages allegedly arising out of defects in workmanship in the construction of a residence, the written contract for which was entered into on November 15, 1967. More specifically, the allegations are that defendants warranted that the residence was constructed in a skillful and workmanlike manner; that they did expressly and impliedly warrant that the residence was free from defects in workmanship and materials; that they represented that the roof of the residence would be free of defects in workmanship and materials for 15 years. It is further alleged that plaintiffs purchased and selected the residence and relied completely on the skill and judgment of defendants and on the representations and warranties; but the residence is not and was not suitable and fit in that the roof was constructed defectively, unskillfully and in an unworkmanlike manner so as to allow water to enter the interior of the residence causing damage. Other defects were alleged as to the front door, the master bedroom wall and the kitchen floor. The deed to the property was dated May 23, 1968, and was recorded the next day.

Defendants pleaded affirmatively the bar of the five year statute of limitations, § 516.120, RSMo 1969. The court found that the ten year statute of limitations applied, and gave a judgment for plaintiffs for $5,610.69, and by Point 2, defendants challenge the ruling that the ten year statute applied.

Plaintiff Gwendolyn S. Ruhling testified that plaintiffs acquired the home in 1968 and had difficulty after they moved in, the end of April, 1968: "A. Water came in every time it rained, the roof was leaking and there was water damage every time it rained. On various occasions it was coming in to the point where we had to keep buckets and towels to keep it from running in." This was just a matter of a few days after they moved in. Gwendolyn called defendant, Robert Dawes, during the rain, and he came out and looked, and got up on the roof, but did not indicate a reason for its leaking. Later, Dawes sent men out to make repairs to the roof, and after the workmen were sent out, plaintiffs experi-

enced subsequent leaking when there were rains. Gwendolyn, herself, went up on the roof on various occasions and observed that there were open lines between the shingles, rather than having one overlapping and covering that particular seam in the shingles. From May, 1968, until the old roof was torn off and a new one installed, it was leaking consistently every time it rained. Plaintiffs replaced the roof at a cost of $3,029.00 in 1976, and since that work was done, the roof has not leaked. On cross-examination, Gwendolyn testified further that she never saw Dawes making repairs except for one time when she saw him put caulking around the chimney area. About a year after she called Dawes, she determined that he was not going to do anything further about the home, and plaintiffs still experienced water damage at that time. Gwendolyn did not put buckets in the crawl space. She could not find where the water was coming through the ceilings because it was difficult to tell wet from dry insulation in the ceiling. She called several roofers and a Mr. Vaught in 1969, but although Vaught said the roof was leaking, he did not fix it at that time. Plaintiffs were still experiencing water damage in 1970, but the first repairs they made were in 1976. The water leakage was creating damage to the interior of their home all that period of time.

In July, 1974, Jim Loveland inspected plaintiffs' roof for the Republican Van Guard Insurance Company. He found that the metal valleys in the roof were installed incorrectly when the house was built. The metal valleys had been crimped when they were installed and small holes appeared down the center of their length, which let water come into the house.

§ 516.110, RSMo 1969, provides that the ten year statute of limitations shall apply to "(1) An action upon any *writing*, whether sealed or unsealed, for the payment of money or property; * * *." (Italics added.) Plaintiffs' action is for damages for breach of an implied warranty of fitness for use of their property as a residence. An inspection of all the exhibits finally filed here in the case shows that there is nowhere any *express written* warranty concerning the construction of plaintiffs' residence (although defendant Dawes did testify he guaranteed his construction results for one year).

*Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo. banc 1972), established liability of a builder-vendor to a first purchaser of a dwelling upon the theory of implied warranty of merchantable quality and reasonable fitness for use as applied to a residence. At page 801, the court said, "In addition, the duration of liability would be premised, also, on a standard of reasonableness." The court did not have before it any issue as to the applicability of any statute of limitation for the beginning of an action upon the implied warranty.

The applicable limitation of actions statute, in these circumstances, is § 516.120, RSMo 1969, requiring that actions shall be brought within five years on "(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited". Under plaintiffs' theory, defendants' "obligation" is to respond in damages upon an implied warranty of fitness for use as applied to their residence constructed by defendants. The cause of action arose when that implied warranty was breached, i. e., when the house was delivered in its alleged defective condition, and plaintiffs moved into it the end of April, 1968, and discovered that the roof was leaking in a matter of a few days after that time. There was just one wrong, as alleged, not continuing wrongs (as in a trespass or nuisance) which might extend the time that the cause of action arose—from the last wrong.

According to defendants' brief, plaintiffs' suit was first begun on January 9, 1975, and service was had upon Robert G. Dawes Construction Company on October 2, 1975. The individual defendants were added as parties at the time the amended petition was filed, October 20, 1976.

Mrs. Ruhling did not testify that she made any contact with defendant Robert P. Dawes after her initial one. Dawes, however, testified that he thereafter heard nothing from plaintiffs except from a lawyer in later years, and he accepted service of process for the corporation in October, 1975, some six years after his last contact with plaintiffs. From all that here appears, there was no opportunity for him to correct any claimed defects in the residence during that time.

The purpose of the statute of limitations is to prevent the assertion of stale claims. *Thatcher v. DeTar*, 351 Mo. 603, 173 S.W.2d 760, 761[1–3] (1943); and see also *State ex rel. and to Use of Collector of Revenue of City of St. Louis v. Robertson*, 417 S.W.2d 699, 701[3] (Mo.App.1967). As noted, the claim for damages arose when it was ascertained that the roof was leaking. Witness Loveland testified that the leakage was caused by improperly installed valleys, while plaintiffs' claim is that the shingle roof was installed improperly, necessitating its replacement. In any event, plaintiffs' claim arose in April or May 1968. Their suit was first filed in January, 1975, and service of process on the corporation was had in October, 1975. More than five years elapsed from the time the cause of action arose, and their suit is therefore barred by § 516.120. See *Neal v. Laclede Gas Company*, 517 S.W.2d 716 (Mo.App.1974), where there was a *written* one year guarantee on an air conditioner, but plaintiffs waited until more than five years from that time to file their suit, held to be barred by § 516.-120. Here, even assuming that defendants' one year oral guarantee (there is no writing in evidence) be excluded in the computation of time, the action was still filed too late. There is no evidence in this record that there was a 15 year guarantee upon the roof so that finding by the trial court is in error.

The judgment is reversed.

All concur.