LINN REORGANIZED SCHOOL DIS-
TRICT NO. 2 OF OSAGE COUNTY,
Missouri, Appellant,

v.

BUTLER MANUFACTURING COMPA-
NY, Western Waterproofing, Inc.,
Frangkiser & Hutchens, Inc., and Vin-
cent Roofing Company, Respondents.

No. 65408.

Supreme Court of Missouri,
En Banc.

June 19, 1984.
Rehearing Denied July 17, 1984.

Robert L. Hyder, Jefferson City, for ap-
pellant.

Thomas J. Wheatley, Timothy K. McNa-
mara, Kansas City, William A. Atkinson,
Columbia, Ronald R. McMillin, Jefferson
City, for respondents.

BILLINGS, Judge.

Suit to recover damages to a public
school building because of faulty design
and improper installation of the roof there-
of. The Circuit Court of Gasconade Coun-
ty granted summary judgment for all de-
fendants, concluding the claims against
them were barred by the statutes of limita-
tion [§§ 516.100, 516.120, RSMo 1978].
The Missouri Court of Appeals, Eastern
District, reversed and remanded. We
granted transfer to consider whether or not
§ 516.097, RSMo 1978, was applicable. We
conclude we need not decide that question
in this case and adopt, with minor modifica-
tions, the opinion of Manford, J., sitting as
Special Judge, as follows:

Numerous points are presented by the
parties on this appeal, but due to the dispo-
sition herein, only one point is considered.
It is contended by plaintiff-appellant that
its claims were not barred by §§ 516.100
and 516.120, the five-year statute of limita-
tions, when suit was filed on October 3,
1977.

Since the ruling by the trial court was
summary judgment, the record on appeal is
comprised of the pleadings, depositions, af-
fidavits, and other documentation as op-

posed to a trial transcript. From those various documents, the following pertinent facts have been developed.

Plaintiff-appellant is the duly reorganized school district (No. 2) of Osage County, Missouri. It desired to construct a vocational school and fieldhouse. On April 8, 1971, respondent Frangkiser & Hutchens, Inc. was selected as the architect for the project, and a contract between plaintiff-appellant and respondent Frangkiser & Hutchens, Inc. was entered into the same day. The contract empowered Frangkiser & Hutchens, Inc. to design the facility and to supervise the work involved in the construction. The contract also provided that the architect (Frangkiser & Hutchens, Inc.) could reject nonconforming work, determine dates of substantial and final completion, and issue the final certificate for payment upon final completion.

The fieldhouse portion of the project was to have a dome type roof. Due to the type of construction, the dome roof was to be erected prior to the construction or addition of any side walls.

The architect submitted the construction plan for the dome roof to respondent Butler Manufacturing Company. Butler made substantial design changes, and there followed a contract for the construction of the dome between plaintiff-appellant and Butler, under date of January 19, 1972.

Respondent Vincent was engaged to install the roof on the dome. From the record, it appears that the supporting portion (excluding side walls) for the dome was in place and completed in July, 1972. The record includes a letter to Vincent from the architect stating that the sum of $10,000 from total payment due Vincent by July 25, 1972 was being withheld, because of the appearance of the dome (i.e., discoloration) and the leaking of the roof. Some roof leaks were stopped by Vincent. Vincent never finished its work on the roof, and the roofing was never finally accepted by the architect. As late as June 13, 1973, the architect informed Vincent, by letter, that unless Vincent returned to the project and finished its work, someone else would be hired to fulfill Vincent's obligation under the contract.

On November 9, 1972, the floor of the gymnasium was being installed, and Vincent was told that the stoppage of the roof leak was urgent. At the same time, Vincent was told by the architect of its (the architect's) dissatisfaction with the dome color.

The main contractor, Wardway Construction Company (who at the time of trial was no longer in business), asked Vincent, by letter of June 25, 1973, to meet with its representatives, because Wardway did not want to repair roof leaks guaranteed by Vincent. By letter of July 11, 1973, the architect advised Vincent that since Vincent had not completed its contract, it would be terminated seven days later (July 18, 1973) as per the terms in the specifications. Vincent's contract was terminated on July 23, 1973. The record reveals that Vincent never completed the work as per the contract terms, and never received full payment.

The deposition testimony of various school board members included their claim that "the roof leaked from the first day of construction" and various other but equally comparable, statements. Plaintiff-appellant's amended petition makes the same claim. It is upon this documentation that respondents premise their claim (and apparently the trial court did also) that plaintiff-appellant's claims were barred by § 516.-120. It is respondents' position that since the roof was installed in July, 1972, and there is evidence to show that the roof leaked as of that time, that plaintiff-appellant's damages were ascertainable as of that date and the statute of limitations commenced to run, thus barring any action filed on October 3, 1977.

Section 516.100 reads as follows, and the specific portion of that section in dispute herein is emphasized:

"516.100. Period of limitation prescribed

Civil actions, other than those for the recovery of real property, can only be

commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, *the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered,* and full and complete relief obtained."

Respondents then argue that § 516.-120 prescribes an applicable limit of five years. Plaintiff-appellant contends that § 516.120 is not applicable, but rather, that § 516.110 (10-year statute) and/or § 516.-097, RSMo 1978 control. We do not address the question of whether the five or ten year statute of limitations is controlling because we conclude that regardless the instant action was properly commenced within the shorter five year period.[1]

The entire dispute on this appeal lies in the question (and the answer to that question) of whether plaintiff-appellant's alleged damages were capable of ascertainment (if more than one item of damage, then the last item) as of July, 1972, so that all resulting damage could be recovered, and full and complete recovery, if warranted, could be obtained.

From the record before this court, the following facts can be summarized to support the conclusion reached herein. In the first instance, plaintiff-appellant's petition makes claim for damages to the *roof* and the *gymnasium floor.* Second, the gymnasium floor was not installed, at the earliest, until November, 1972. Even if the date urged by respondents (July, 1972) is accepted regarding the roof damage, the damage relative to the gymnasium floor could not have been ascertained anytime prior to November, 1972, and the statute of limitations could not have run against that claim.

In addition, the fact that there is deposition testimony that the roof leaked from the first day of construction is not, as respondents would have that evidence interpreted, an ascertainment of damages, but rather, is evidence of an alleged faulty condition. From the record, it appears that in July, 1972, there existed a dome roof structure independent of supporting walls, flooring, and other integrated parts of the structure added later by continued construction. The record shows that the roof was leaking at the time, and thus suffering damage in its own capacity, but simultaneously, the roof was a source of damage to subsequently added portions of the facility. From the record herein, the mere evidence that the roof leaked from the first day of construction is not supportive of a conclusion that damages as of that time were ascertainable.

To follow respondents' theory would place upon an aggrieved party the task of piecemeal litigation. For example, if respondents' theory was followed, a claimant would have to sue a roofer within five years of the first leakage, although the remainder of a project might well extend beyond a five-year period; but upon the given facts, it could be clearly ascertained that the roof leakage directly attributed to losses within or to the remainder of the project, along with continual roof damage. Neither § 516.100 nor § 516.120 contemplate or even permit such a suggestion.

In the instant case, it is obvious that the damages allegedly caused by the roof, either by way of design or construction, were continual during the remaining period of construction of the facility. It cannot be concluded from the documentation upon this record that §§ 516.100 and 516.120, as a matter of law, barred plaintiff-appellant from a trial upon its claim for damages.

What § 516.100 and § 516.120 require for the commencement of the running of the statute is that the resulting damage "*is*

---

1. We do not adopt the conclusion of the appellate court that § 516.110 and/or § 516.097 are inapplicable.

*capable of ascertainment."* Respondents direct our attention to *Dixon v. Shafton,* 649 S.W.2d 435 (Mo. banc 1983). There the court addressed the applicability of § 516.120 to a contract and obligations due under that contract, according to predetermined and agreed-to dates within the contract. The facts and circumstances of *Dixon* distinguish that case from the instant case. In *Dixon,* the court noted that when a party to the contract notified others to the contract that a mistake had been made and he obtained legal counsel that "a substantial claim existed as to them." *Dixon v. Shafton,* 649 S.W.2d at 438. Respondents wish to liken the instant case, wherein an ongoing construction project involved continual damages, to the contractual question in *Dixon.* In *Dixon,* the damages were *capable of ascertainment* from a certain date. In the instant case, this is not so. The two cases are distinguishable and *Dixon* does not control.

The instant case is more closely akin to *Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 556 (Mo. banc 1980) from which the following is quoted:

We are attracted to the view articulated in *Developments in the Law—Statutes of Limitation,* 63 Harv.L.Rev. 1177, 1205 (1950) that Missouri's 'capable of ascertainment' language represents a statutory recognition 'that the "cause of action" which commences the limitations period should not refer to the "technical" breach of duty which determines whether the plaintiff has any legal right, but to the existence of a practical remedy.' More importantly, the *Developments* article deals with 'continuing or repeated wrongs' as · follows (at 1205 and 1206):

'If some completed part of the defendant's conduct will cause all the harm which may result, so that continuance or repetition will not increase the plaintiff's damage, the statutory period properly commences immediately without regard to future conduct, for the certainty of harm is sufficient to allow recovery for all the damage and the first impact generally assures both knowledge of the conduct and incentive to sue....

'Where the potentiality of future harm is not clear, however, limitations should not run until damages become recoverably certain. Thus, the possibility that the defendant may remove the harmful condition or cease his wrongful conduct, or that injury may not result, may prevent the recovery of full prospective damages, so that the period limiting an action to recover for such damage does not begin prior to its maturation. Since the amount of future harm will vary with the extent of the later wrongful conduct, recovery is permitted only for that portion of the wrong—whether it be affirmative conduct or a failure to act—which has occurred within the statutory period immediately preceding suit ....'

We have concluded that the following rule of law should be applied *in the peculiar and particular circumstances* of this case: if the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

In a more recent case, it was held that "a cause of action accrues 'when the damage resulting therefrom is sustained *and is capable of ascertainment.'* Cases have further defined accrual as when 'there exists the right of the injured party to bring and maintain a claim in a court of law,' *Excel Drug Co. v. Missouri Dept. of Revenue,* 609 S.W.2d 404, 409 (Mo. banc 1980), and *when it is within the claimant's power to prosecute a suit to successful judgment."* (emphasis added) *Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811, 814 (Mo.App.1982).

■ Absent also is a showing by unassailable proof that any defendant could be found to have been in default more than five years before being named as a defendant in this case. The statute of limitations does not begin to run in a contract action until the time allowed for correction of defects has passed. *Ballwin Plaza Corp. v. H.B. Deal Construction Co.*, 462 S.W.2d 687 (Mo.1971).

Under the facts and circumstances in the instant case, it has not been shown that plaintiff-appellant's damages were "capable of ascertainment" as that term is used and interpreted within the meaning of § 516.100, as of July, 1972. The trial court erred in entering summary judgment for respondents upon the application of § 516.-120 as a bar to recovery.

The judgment is reversed and the cause remanded.

HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., concur.

HOUSER, Senior Judge, concurs in part and dissents in part in separate opinion filed.

RENDLEN, C.J., concurs in part and dissents in part as per separate opinion of HOUSER, Senior Judge.

WELLIVER, J., not sitting.

HOUSER, Senior Judge, concurring in part and dissenting in part.

Under the doctrine of *Ballwin Plaza Corporation v. H.B. Deal Construction Company*, 462 S.W.2d 687 (Mo.1971), I agree with the majority opinion insofar as it holds that the school district's action against Butler Manufacturing Company is not barred by the statute of limitations. Butler guaranteed in writing to correct, repair or replace defective materials or workmanship for a one-year period after completion of the work. The district's action against Butler thus accrued in June, 1973, when the guarantee period expired. The district filed suit against Butler on October 3, 1977, several months before expiration of the period of limitations.

I respectfully dissent, however, from the ruling and rationale of the majority opinion that the district's action against Frangkiser & Hutchins, Inc., the architect, and Vincent Roofing Company, is not barred by the statute of limitations.

When the roof leaked the damage resulting from the architect's breach of warranty and from the roofer's faulty construction, was sustained and was capable of ascertainment. The damage was not only *capable* of ascertainment; it was *actually* ascertained, as established by unassailable evidence: the pleadings filed by the school district and its judicial admissions contained therein and in its appellate brief; the answers of the parties to interrogatories; the undenied correspondence between the parties and the extensive deposition testimony of Dewey Phillips, Superintendent of the School District: Thurman Willett, former Superintendent; Donald Broman, Eugene Plegge, Sigel Holland, Joseph J. Fick, Jr., Charles Campbell, and Joseph T. McCuskey, present and former members of the school board, and experts Harold Schulte and J. Robert Bence. This evidence and these admissions established beyond cavil that the roof leaked from the time it was applied; that it continued to leak every time it rained; that the members of the school board had personal knowledge of the fact that the roof leaked, "from day one," and at the latest by July 31, 1972.

"The claim for damages arose when it was ascertained that the roof was leaking." *Ruhling v. Robert Dawes Construction Co.*, 610 S.W.2d 403, 406 (Mo.App.1980); *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980); *Grand Island School District # 2 of Hall County v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603, 608[6] (1979); *Wills v. Black and West, Architects*, 344 P.2d 581 (Okla.1959). The school board's cause of action against the architect for breach of warranty arising out of defective design, and against the roofer for faulty construction, therefore, accrued in July, 1972, but suit was not filed until October 3, 1977—more than five years

after accrual of the cause of action. The cause of action was barred by the five-year statute of limitation.

The majority opinion excuses the school district's tardy filing of suit on the basis (unpleaded) that there was more than one item of damage and that the last item of damage occurred sometime in November, 1972, within the five years preceding the date the petition was filed. (The gymnasium floor warped as a result of water leaking through the roof onto the floor sometime in November, 1972.)

The conclusion that there was more than one item of damage is unwarranted. The school district claims that the corporate architect breached its warranty that it would design a roof which when constructed would be watertight; that the architect's improper and faulty design resulted in the construction of a leaky roof. There was one and only one breach of warranty, not several successive breaches of warranty. There was only one "item of damage"; only one "resulting damage", namely, a roof that leaked. The item of damage—the resulting damage—was defective construction which caused, allowed and permitted water to enter the building. When the school board ascertained that the roof leaked and would not repel, divert and shed rainwater a cause of action accrued *at that time* for all injurious consequences, past and future, and the five-year statute of limitations began to run *at that time*. A new cause of action for breach of warranty in this leaky roof case does not arise after each succeeding rainfall in which property damage results from invading water. One cause of action arises from one breach of warranty and all damages, past and prospective, may be recovered in one action. The fact that the school district had been damaged by defective design and faulty construction, was ascertained by the responsible representatives of the district on and before July 31, 1972. The cause of action arose in July, 1972. The fact that the extent of the damages was not then fully known and would depend upon future eventualities did not delay or postpone the accrual of the cause of action, or prevent the commencement of the running of the statute of limitations. The district then had five years within which to pursue its claim for all resultant property damage, including the damage from the November, 1972 rainfall which warped the gymnasium floor, and all future damages.

Last year this Court held that "The word 'ascertain' has always been read as referring to the fact of damage, rather than to the precise amount." *Dixon v. Shafton*, 649 S.W.2d 435, 438 (Mo. banc 1983). The Court recognized that "[i]n many actions the extent of the damage may be dependent on uncertain future events," but that uncertainty about the eventual outcome of the litigation or the amount that possibly might be recovered does not preclude the filing of suit *or delay the accrual of the claim for the purpose of the statute of limitations.* The Court said that "[t]he most that is required is that some damages have been sustained, so that the claimants know that they have a claim for some amount." 649 S.W.2d at 439.

Until it is fixed a leaky roof leaks every time it rains, intermittently and indefinitely into the future, but "[w]hether the injury causes continuous or intermittent damages is not the test. When a substantial injury is done, a cause of action arises for all past and future damages." *Person v. City of Independence*, 114 S.W.2d 175 (Mo.App. 1938).

The "last item of damage" language of § 516.100, applied to a leaking roof case based upon an architect's breach of warranty, does not admit of the interpretation that each leakage after each rainfall constitutes a separate item of damage.

A case in point is *Arst v. Max Barken, Inc.*, 655 S.W.2d 845 (Mo.App.1983), in which owners of a residence sued the building contractor for breach of warranty in the construction of the building. In August, 1969, within one month after occupying the house, the owners discovered cracks, leaks and shifting of the founda-

tion, which continued through the years. They did not file suit until March of 1981. To excuse their delay the owners contended that their damages were not ascertainable until after April of 1976 when "additional movement (of the house) occurred," and "only then could appellant have maintained an action for the full extent of their damages to a successful conclusion."[1] Upholding the trial court's denial of relief on the basis of limitations the appellate court, Dowd, J., reasoned as follows, at 847:

> "Only when there is more than one item of damage does the cause of action accrue, so as to begin only after the last wrong has been completed. *Ruhling v. Robert Dawes Construction Company*, 610 S.W.2d 403, 405 (Mo.App.1980). When there is only one wrong which results in continuing damage, as in the case at bar, the cause of action accrues when that wrong is committed and the damage sustained is capable of ascertainment. We find that there was just one wrong committed here, not continuing wrongs. Consequently, appellants cause of action accrued in August of 1969 when their house was delivered in its defective condition and appellants discovered the cracks and shifting of their house's foundation. At this time, the damage was sustained and capable of ascertainment. The fact that the damage was continuing is immaterial since an instruction on future damages is included in the Missouri Approved Instructions and appropriate in such circumstances."

I would affirm the judgment of the trial court dismissing with prejudice the school district's claims against defendants Vincent Roofing Company and Frangkiser & Hutchens, Inc.; reverse the judgment dismissing the claim against defendant Butler Manufacturing Company, and remand the cause for further proceedings consistent with this opinion.

1. The school district's pleaded excuse for its delay in filing suit is that "while the roof leaked continuously plaintiff was not fully advised until approximately the time of filing of this suit of

the nature and extent of the breach of warranty of defendants and the conditions herein set forth until 1977."