M & D ENTERPRISES, INC., a Missouri Corporation, and International Materials Corporation, a Missouri Corporation, Plaintiffs–Appellants,

v.

Richard WOLFF, Attorney and Counselor at Law, P.C., a Missouri Professional Corporation, and Richard Wolff, Esq.; Constantine G. Pulos, and Pulos, Blankenship and Jianakopolos, P.C., a Missouri Professional Corporation, corporate successor to Doskocil & Pulos, Inc., a Missouri Professional Corporation, Defendants–Respondents.

Nos. 19983, 20049.

Missouri Court of Appeals,
Southern District,
Division One.

March 22, 1996.

Opinion Denying Rehearing En Banc
and Application for Transfer
May 20, 1996.

Application to Transfer Denied
June 25, 1996.

David L. Wieland, Yates, Mauck, Bohrer, Elliff, Croessmann & Wieland, P.C., Springfield, for plaintiffs-appellants.

Harold F. Glass and Michael P. Mergen, Springfield, for defendants-respondents.

GARRISON, Judge.

This appeal involves the statute of limitations in a suit against attorneys for legal malpractice. The suit was filed by M & D Enterprises, Inc. (M & D) and International Materials Corporation (IMC) (collectively referred to as Plaintiffs) against Defendants Richard Wolff (Wolff) and Constantine G. Pulos, as well as professional corporations with which they were associated (collectively referred to as Defendants), alleging that Defendants improperly represented Plaintiffs in their suit against Carboline Company, Inc. (Carboline). Plaintiffs appeal from an order granting Defendants' motions for summary judgment based on the statute of limitations. We affirm.[1]

1. The trial court, by letter dated November 21, 1994, informed the parties that it was granting summary judgment and instructed Defendants' attorney to prepare an order for his signature.

The essential facts are as follows:[2] M & D entered into an agreement with Carboline by which M & D would manufacture, and Carboline would market, fireproofing materials for which M & D owned a patent. Later, the principals of M & D formed IMC, which then entered into an agreement with Carboline to manufacture and sell the products internationally in return for royalties.

As a result of disagreements with Carboline, Harvey Davis, the president of both M & D and IMC, met with Defendants on May 16, 1978, and discussed the possibility of employing them to pursue claims against Carboline for commissions owed and for the unauthorized use of the product formulas. On May 19, 1978, however, Carboline filed a suit in St. Louis County seeking injunctive relief against M & D and obtained a temporary restraining order. Defendants were employed to represent Plaintiffs in the Carboline suit on May 26, 1978.

When Mr. Davis appeared in court on July 18, 1978 in response to an order to show cause why the temporary restraining order should not be converted into a temporary injunction, Wolff presented him with a "Temporary Consent Injunction," already signed by himself and Carboline's attorney, and which had been approved by the judge. He advised Davis to sign the consent injunction, saying the judge had already made up his mind and would hear nothing further. Mr. Davis consented to the injunction, which barred Plaintiffs from manufacturing the product at issue, after Wolff allegedly refused his demands to oppose the injunction and request a hearing on the matter.

On July 26, 1978, Defendants filed a counterclaim against Carboline seeking damages. Plaintiffs allege, however, that contrary to Mr. Davis' requests, the counterclaim did not include claims for fraud and breach of fiduciary duty. Thereafter, Mr. Davis complained to Defendants about the lack of progress of the case, including a letter dated January 2, 1980 which recited that there had been no action by the court in the last year. The case was later placed on the dismissal dockets at least twice, in 1983 and in 1985, but dismissal was avoided each time.

Carboline later merged with Sun Company, Inc. (Sun) and on Wolff's recommendation that a federal suit would permit a more expeditious processing of their claims, Defendants filed suit, on behalf of Plaintiffs, against Sun in the United States District Court for the Eastern District of Missouri. The suit alleged generally the same causes of action as were alleged against Carboline in the state court counterclaim. The federal court, however, sustained Sun's motion for summary judgment on January 8, 1985 for failure to join an indispensable party (Carboline), whose joinder would have defeated diversity jurisdiction. Plaintiffs allege that, contrary to their request, Defendants did not appeal that ruling. Defendants also informed Plaintiffs that Sun planned to seek recovery of approximately $26,000 in costs as a result of the dismissal of the federal case. Although Plaintiffs did receive a bill of costs in the amount of $26,278 in that case, in fact something in excess of $5,000[3] was apparently assessed and paid by Plaintiffs.

As a result of Plaintiffs' growing dissatisfaction with Defendants, Mr. Davis wrote a letter addressed to the Bar Association of Metropolitan St. Louis on May 2, 1985, which he claims was never mailed, complaining about Defendants' services and saying that Plaintiffs had lost confidence in them. Mr.

---

Plaintiffs filed a notice of appeal (Case No. 19983) directed to that order on December 20, 1994. Thereafter, the trial court signed a formal order granting the summary judgment on December 27, 1994. Plaintiffs' notice of appeal from that order (Case No. 20049) was filed on January 27, 1995. These appeals have been consolidated.

2. The facts of the underlying litigation are also contained in *International Materials Corp. v. Sun Corp.*, 824 S.W.2d 890 (Mo. banc 1992) (involving the appeal of the trial court's ruling regarding Defendants' right to recover for the reasonable value of their services).

3. The amount actually paid as costs is referred to as $5,100 in some parts of the record and $5,551.65 in others.

Davis stated that they had made arrangements to employ other counsel in Springfield, Missouri, but it was necessary to resolve an existing fee dispute with Defendants.[4] He also said that Defendants were not entitled to any additional fees because of the way they had represented Plaintiffs in the matters.

On June 24, 1985, Plaintiffs entered into a written contingent fee contract with attorneys in Springfield. During the discussions, the Springfield attorneys discussed with Mr. Davis the possibility of a malpractice suit. In July, 1985, Defendants withdrew from both the St. Louis County and federal court cases. On August 9, 1985, Plaintiffs wrote Defendants discharging them "for cause," saying their "employment as attorneys is revocable for cause including, but not necessarily limited to nonperformance and failure to prosecute our claims with reasonable diligence." Thereafter, Defendants performed no further legal services for Plaintiffs.

Plaintiffs' new counsel filed an action against Sun in Greene County and, on May 27, 1988, obtained a dissolution of the Temporary Consent Injunction in the suit pending in St. Louis. In October, 1989, Plaintiffs reached a settlement of the St. Louis and Greene County actions under which Plaintiffs received $2,660,000 and return of the disputed formulas. After litigation of Defendants' claim against Plaintiffs for attorney fees,[5] Plaintiffs also settled Defendants' claim for the reasonable value of their services, with the agreement that the settlement would not prejudice any other rights the parties might have.

On April 2, 1993, Plaintiffs filed this suit alleging that Defendants were guilty of negligence and breach of fiduciary duties in their representation of Plaintiffs. Defendants filed motions for summary judgment claiming that the applicable statute of limitations, § 516.120,[6] expired prior to the filing of Plaintiffs' petition. The trial court sustained these motions and entered summary judgment for Defendants.

On this appeal, Plaintiffs allege trial court error in granting the summary judgment because: (1) the statute of limitations could not have commenced running until Plaintiffs sustained damages, which did not occur until the conclusion of the underlying claim against Carboline; (2) the statute of limitations could not have commenced running until the last item of damage suffered by Plaintiffs had accrued which also would have been when the underlying claims were settled; (3) Defendants should be equitably estopped from raising the statute of limitations as a defense or § 516.280 should have prevented the statute from running; and (4) there were genuine issues of material fact concerning the accrual of the cause of action.

## POINT I

Plaintiffs' first point relied on asserts that the trial court erred in granting the summary judgment because the statute of limitations did not commence running until Plaintiffs were able to prove "the cause of damages they suffered or until Appellants actually suffered some damages." They claim that this would not have occurred until the conclusion of the underlying claim; thus, their cause of action against Defendants did not accrue, and the five-year statute of limitations did not commence to run, until the claim against Carboline was settled in October, 1989. As a result, they contend that the suit against Defendants, filed on April 2, 1993, was timely.

▌ The propriety of a summary judgment is purely an issue of law which an appellate court reviews *de novo* on the record submitted. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria used

---

**4.** Defendants were demanding $30,000 or a percentage of any recovery if their services were terminated.

**5.** See *International Materials Corp. v. Sun Corp.*, 824 S.W.2d 890 (Mo. banc 1992).

**6.** All statutory references are to RSMo 1986, and all Rule references are to Missouri Rules of Civil Procedure (1995) unless otherwise noted.

by appellate courts in reviewing the entry of a summary judgment are no different than those which should be employed by the trial court. *Id.* The movant bears the burden of establishing a right to judgment as a matter of law and the absence of any genuine issue of material fact required to support the right to judgment. *Id.* at 378; Rule 74.04. Facts in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion, and the non-movant is accorded the benefit of all reasonable inferences from the record. *Modern Tractor & Supply Co. v. Leo Journagan Constr. Co.,* 863 S.W.2d 949, 950 (Mo.App.S.D.1993).

Neither party contests the fact that the five-year statute of limitations (§ 516.120) applies to the instant case. The determination of when a cause of action accrues for statute of limitations purposes, however, is governed by § 516.100 which provides, in part:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but *when the damage resulting therefrom is sustained and is capable of ascertainment,* and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained. (Emphasis added.)

Missouri courts have applied statutes of limitations with some strictness. *Dixon v. Shafton,* 649 S.W.2d 435, 440 (Mo. banc 1983). Our courts, however, have never precisely defined the "capable of ascertainment" language in § 516.100, and there is confusion regarding the appropriate test to determine when damage is "sustained" and "capable of ascertainment." *Delp v. Doe,* 895 S.W.2d 91, 93 (Mo.App.E.D.1995).

■ Damage is sustained and capable of ascertainment for purposes of the statute of limitations when it can be discovered or made known, even though the amount of damage is unascertained. *Modern Tractor & Supply Co. v. Leo Journagan Constr. Co.,* 863 S.W.2d at 952. When the *fact of damage* becomes capable of ascertainment, the statute of limitations is put in motion. *Brower v. Davidson, Deckert, Schutter & Glassman,* 686 S.W.2d 1, 4 (Mo.App.W.D.1984). The test is when the plaintiff could have first successfully maintained the action. *Modern Tractor & Supply Co. v. Leo Journagan Constr. Co.,* 863 S.W.2d at 952; *Anderson v. Griffin, Dysart, Taylor, Penner & Lay,* 684 S.W.2d 858, 860–61 (Mo.App.W.D.1984). This is a question of law. *Id.* at 861.

The Missouri Supreme Court discussed the statute's language in *Dixon v. Shafton,* 649 S.W.2d at 437. There, the court held that a legal malpractice action was barred by § 516.120 where the claimants learned of the malpractice and retained new counsel more than five years prior to the filing of the suit. *Id.* at 438. In explaining § 516.100, the court found that the word "ascertain" has always been read as referring to the fact of damage, rather than the precise amount. *Id.* The extent of damage may be dependent on uncertain future events, but this has "never been held to preclude the filing of suit" or delay the accrual of a claim for the purposes of the statute of limitations. *Id.* at 439. The statute only requires that some damages have been sustained, and that the claimants know that they have a claim for some amount. *Id.*

■ Appellate courts of all three districts have followed *Dixon. See Zero Mfg. Co. v. Husch,* 743 S.W.2d 439, 441 (Mo.App.E.D. 1987); *Bormaster v. Baldridge,* 723 S.W.2d 533, 540 (Mo.App.S.D.1987); *Brower v. Davidson, Deckert, Schutter & Glassman,* 686 S.W.2d at 4. Plaintiffs, however, claim that these cases are factually distinguishable in that each, while recognizing the accrual of a cause of action before resolution of an underlying case or claim, involved claims

*against* the client as a result of the attorney's negligence. They acknowledge that a defending party cannot help but suffer damages in litigation since, at a minimum, there will be attorney fees for defense against a claim that only arose because of an attorney's negligence. However, in the instant case, Plaintiffs had a preexisting claim against Carboline, the settlement of which was allegedly harmed by Defendants' advice and actions. Thus, Plaintiffs were pursuing, not defending, a claim. As a result, Plaintiffs urge that the party bringing the claim "knows nothing of the value of his claim until the jury comes back or the case is settled. Even if he is aware that his lawyer has committed an error, a claimant never knows whether that error will actually cause him damages until resolution of the claim." Although Plaintiffs find a distinction based on whether the case involves claims *against* the client rather than *affirmative* claims by the client, we note that under both scenarios the client is uncertain of his total damage until the occurrence of later events.

The fact that a plaintiff might possibly be made whole by another party has not always prevented a cause of action from accruing. *Hopmeier v. First Am. Title Ins. Co.*, 856 S.W.2d 387 (Mo.App.E.D.1993), involved a claim for damage against a title insurance company as a result of an incorrect real estate description. The plaintiffs argued that the statute of limitations did not begin running until they were unsuccessful in obtaining a correction deed from their grantors. The court said:

> As a result of the error in the property's description, appellants had a diminished interest in land they thought they owned outright. Such a diminution is damage, regardless of the measures taken to correct it. As respondents correctly point out, *if we were to accept appellants' position, no suit would ever accrue until all possibility of settlement expired. We know that this is simply not the way the system works.* (Emphasis added.)

*Id.* at 389–90.

Plaintiffs rely on *Eddleman v. Dowd*, 648 S.W.2d 632 (Mo.App.E.D.1983), and *Cain v.*

*Hershewe*, 760 S.W.2d 146 (Mo.App.S.D. 1988). The malpractice suits in *Eddleman* and *Cain* were dismissed as premature because, as long as the underlying suits seeking affirmative relief were pending, there was a possibility that the clients might be made whole and, as a result, they could prove no damages flowing from the representation. 648 S.W.2d at 633; 760 S.W.2d at 149. In neither case, however, was there an indication that the plaintiff had suffered other damages which were proximately caused by the attorneys' negligence.

The Temporary Consent Injunction was entered in Carboline's claim against M & D in the state court case. According to Plaintiffs' petition,[7] the injunction was entered over the objections of their president, Mr. Davis, that M & D could not remain viable under its terms and that he wanted a hearing on the matter. According to Plaintiffs' allegations, Mr. Davis acceded to the advice of Wolff after he refused to pursue Mr. Davis' objections. They allege in this suit that the injunction damaged them by making the continuation of M & D's business a practical impossibility, the same contention they say Mr. Davis made at the time it was entered. This all occurred on July 18, 1978.

Plaintiffs also allege that Mr. Davis was "furious" when he learned, shortly after signing the consent injunction, that the bond was set at only $20,000, and further that the injunction terminated the ability to manufacture Plaintiffs' principal product. Mr. Wolff's affidavit, incorporated into his motion for summary judgment, included a recital that Mr. Davis testified that M & D's damages, as a result of the consent injunction, were $20,000 per month. Plaintiffs did not refute these matters in opposing the summary judgment.

Plaintiffs' contention that they had not sustained damage until their preexisting claims against Carboline were resolved ignores the admitted effects of the consent injunction. Under these facts, M & D knew it was

---

**7.** In this and other instances, Plaintiffs' petition was referred to in support of the motions for summary judgment.

sustaining, and would continue to sustain, what it claims was substantial damage when the consent injunction was entered in 1978. Plaintiffs do not contend that the damage they claim from Defendants in this suit as a result of the injunction is related in any way to their preexisting claims against Carboline. Thus, we must conclude that, at least as to M & D,[8] there was no genuine issue about the fact that damage resulting from the consent injunction was known and was being continuously sustained from 1978. M & D admittedly knew at that time what it now alleges as a basis for recovery against Defendants. Certainly, this was sufficient for the statute of limitations to commence running as early as 1978.

■ Plaintiffs also allege that Defendants are liable to them for damages sustained as a result of the suit which they filed in federal court. They claim that Defendants advised them to institute the suit when they knew or should have known that diversity jurisdiction was lacking or that the suit would be subject to dismissal upon joinder of an essential party. One of the items of damage being claimed by Plaintiffs is $5,551.65 which they were required to pay in court costs after the summary judgment was entered in the federal case in January, 1985. There is no showing that those costs were, or could have been, a part of Plaintiffs' preexisting claims against Carboline which remained unresolved until settled in October, 1989.[9] Under their own theory, Plaintiffs incurred damage with the payment of those costs, which would have resulted in the accrual of a claim for which the statute commenced running.

In *Dixon v. Shafton*, 649 S.W.2d at 438, the Missouri Supreme Court found that damage had been sustained, and the statute of limitations commenced running, when the clients employed new counsel after discovering that their attorney may have committed

negligence exposing them to a claim. Likewise, in *Bormaster v. Baldridge*, 723 S.W.2d at 540, employment of counsel as a result of the alleged errors of the original attorney was found to constitute damage sufficient for the accrual of a cause of action against the attorney pursuant to § 516.100.

Plaintiffs' contention under this point also ignores the fact that Plaintiffs had originally hired Defendants by paying a $5,000 retainer and agreeing to a graduated contingent fee ranging from 10% of the first $100,000 recovered to 25% of the amount recovered over $400,000. The agreement also contained a provision that if hourly charges would result in a greater fee than the contingent fee, the higher of the two would be paid, with a cap of 48% of the recovery.

In June, 1985, after becoming dissatisfied with the services of Defendants, Plaintiffs hired the Springfield firm under another contingent fee contract calling for 50% of the recovery made by IMC and 45% of that made by M & D. This was done with the knowledge that Defendants were claiming $30,000, or a percentage of any eventual recovery, as their compensation upon discharge.[10]

Plaintiffs discharged Defendants on August 9, 1985 for cause, including "nonperformance and failure to prosecute our claims with reasonable diligence." In the instant suit, Plaintiffs allege that Defendants effectively abandoned Plaintiffs' interests by refusing to diligently and effectively prosecute the state court action, and that they undertook the case when they knew or should have known that it was beyond their resources and staff. Therefore, the allegations upon which Plaintiffs base their right of recovery against Defendants are encompassed within the reasons they discharged Defendants in August, 1985 and hired replacement counsel

---

**8.** M & D was the only defendant named in Carboline's suit in state court. The record before us does not indicate whether IMC ever became a party to that proceeding.

**9.** This is true even though Plaintiffs' response to the motions for summary judgment included the affidavit of Mr. Davis which stated that they were "reimbursed" out of the settlement for the assessed costs paid in the federal case.

**10.** Defendants' claim for attorney fees was eventually settled on terms that are not apparent from the record before us after the Missouri Supreme Court remanded the matter to the circuit court for findings to determine "benefits conferred upon the client based upon actual value to the client." *International Materials Corp. v. Sun Corp.*, 824 S.W.2d at 896.

under a higher contingent fee agreement. These matters were not disputed by Plaintiffs in their response to the motions for summary judgment. Under the principles of *Dixon* and *Bormaster,* these events would also cause the statute of limitations to begin running.

Plaintiffs' claim against Defendants accrued, at the latest, in 1985, more than five years before the instant suit was filed. Clearly, by that time damages were not only "capable" of ascertainment by Plaintiffs, they were ascertained. *See Brower v. Davidson, Deckert, Schutter & Glassman,* 686 S.W.2d at 3. Plaintiffs had knowledge of the wrongs they allege were committed and the existence of matters which could constitute damage.

█ Plaintiffs also rely on a line of cases which have created an "expert" rule regarding § 516.100. *See Martin v. Crowley, Wade & Milstead, Inc.,* 702 S.W.2d 57, 58–59 (Mo. banc 1985); *Anderson v. Griffin, Dysart, Taylor, Penner & Lay,* 684 S.W.2d at 862; *Thorne v. Johnson,* 483 S.W.2d 658, 663 (Mo. App.W.D.1972). These cases indicate that when a plaintiff has engaged expert or professional services, including those of an attorney, there is no obligation to check the action or inaction of the party employed, unless facts or circumstances which suggest an error are known by or are available to the plaintiff. *Martin v. Crowley, Wade & Milstead, Inc.,* 702 S.W.2d at 64; *Anderson v. Griffin, Dysart, Taylor, Penner & Lay,* 684 S.W.2d at 862. These cases, however, involve situations where the plaintiffs were unaware of the possibility that they had a claim. As indicated above, in the instant case Plaintiffs were aware of at least some of the acts which they now allege as a basis for this claim against Defendants and of some of the matters they now claim as damages. This was at least eight years before this suit was filed.

Point I is denied.

### POINT II

█ Plaintiffs contend in their second point that the summary judgment was error because the statute of limitations did not begin to run until they sustained their last item of damage which occurred "at the earliest" with the settlement of the claim against Carboline in October, 1989.[11] This contention is based on the language of § 516.100 which provides that a cause of action accrues when the damage is sustained and capable of ascertainment, "and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Plaintiffs rely principally on *Linn Reorganized Sch. Dist. No. 2 v. Butler Mfg. Co.,* 672 S.W.2d 340 (Mo. banc 1984), and *Davis v. Laclede Gas Co.,* 603 S.W.2d 554 (Mo. banc 1980), in support of this contention. These cases are distinguishable upon their facts.

In *Davis,* the Missouri Supreme Court held that, in the case of a *continuing* tort and breach of contract, the plaintiff could attempt to allege and prove a cause of action for the wrong occurring within the statutory period immediately preceding the filing of suit. 603 S.W.2d at 556. In doing so, the court said:

> We have concluded that the following rule of law should be applied *in the peculiar and particular circumstances* of this case: if the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

*Id.*

Unlike *Davis,* however, Defendants' involvement in the underlying case ended more than five years prior to the filing of this suit. Additionally, Plaintiffs' theory is that Defendants' acts and omissions resulted in the claim against Carboline being settled for less than their economic losses. We are directed

---

11. Plaintiffs argue that this was true even if they sustained earlier damage which was capable of ascertainment, such as damage resulting from the consent injunction.

to nothing in the thirty-nine page petition, however, which could be construed as an allegation that Defendants' acts resulted in continuing damage to the underlying claims against Carboline which created "a fresh injury from day to day." *Davis,* therefore, does not provide the safe haven hoped for by Plaintiffs.

*Linn* involved the design and construction of a gymnasium. The roof leaked from the time of its installation in July, 1972. The gymnasium floor, however, was not installed until November 9, 1972. After unsuccessful requests that the roof installer repair the roof leaks, his contract was terminated on July 23, 1973, and suit was filed October 3, 1977. The court held that the suit was not barred by the statute of limitations because the claim was for damages to both the roof and gymnasium floor, but the damage to the floor could not have been ascertained until its installation in November, 1972. 672 S.W.2d at 342. The court noted, however, that none of the defendants were shown to be in default under the contract for more than five years prior to the filing of suit. *Id.* at 344.

The *Linn* court relied heavily on *Davis* and its reference to wrongs which create a fresh daily injury and the existence of a defendant's continuing capacity to terminate the wrong. *Id.* at 343. As indicated, those features did not exist here. Additionally, while the instant case is not founded on contract, we note that the only acts which are alleged to have been negligent were committed by Defendants prior to their discharge from the representation of Plaintiffs in August, 1985, over seven years before this suit was filed.

As indicated in our discussion of Plaintiffs' first point, there are a number of cases which have held that, in malpractice claims against attorneys, the statute of limitations commenced to run before resolution of the underlying dispute upon which those claims were based. *Dixon v. Shafton,* 649 S.W.2d at 438; *Zero Mfg. Co. v. Husch,* 743 S.W.2d at 441; *Bormaster v. Baldridge,* 723 S.W.2d at 540; *Brower v. Davidson, Deckert, Schutter & Glassman,* 686 S.W.2d at 4. In none of those cases was the accrual of a cause of action delayed by the fact that a person

sustained later damage resulting from the same acts which also produced earlier ascertainable damage.

The provisions of § 516.100 concerning accrual of causes of action apply to the limitation periods contained in §§ 516.100–.370. These same provisions apply, therefore, to a broad range of causes of action arising under different factual settings and theories. In this regard, we note that in cases arising from physical conditions contracted or sustained by a claimant, our courts have indicated that the damage, for statute of limitations purposes, is the physical ailment or condition. *Lockett v. Owens–Corning Fiberglas,* 808 S.W.2d 902, 907 (Mo.App.E.D.1991). In *Allison v. Missouri Power & Light Co.,* 59 S.W.2d 771 (Mo.App.E.D.1933), the court held that the statute commenced running when an injury was sustained and not when it became necessary three years later for plaintiff to undergo an operation. The court said:

> Undoubtedly the full extent and character of the disability to result therefrom was not then known, but all such matters, sometimes broadly referred to as items of damage, which were pleaded by plaintiff in an endeavor to avoid the bar of the statute, were after all but aggravating circumstances enhancing the legal injury already inflicted, and constituting mere developments of such injury, and were not of a character to delay the accrual of the cause of action.

*Id.* at 773. *See also Newton v. B.P.S. Guard Services, Inc.,* 833 S.W.2d 14, 16 (Mo.App. W.D.1992). If Plaintiffs' interpretation of § 516.100 is correct, the statute of limitations in a personal injury case would not commence to run until all treatment was concluded, or so long as the plaintiff could demonstrate a continuing loss of income as a result of the injuries.

The application of § 516.100 urged by Plaintiffs in this point could also result in the accrual of a cause of action being controlled or manipulated by a party. For instance, if a statute of limitations did not commence running until an underlying claim was resolved, a plaintiff could, by delaying that event, unilaterally extend the limitation period. The

possibility of control of the statute of limitations by parties has been considered by Missouri courts in interpreting § 516.100 so as to avoid that possibility. *See Vandenheuvel v. Sowell,* 886 S.W.2d 100, 103 (Mo.App.W.D. 1994); *Modern Tractor & Supply Co. v. Leo Journagan Constr. Co.,* 863 S.W.2d at 954; *Lockett v. Owens–Corning Fiberglas,* 808 S.W.2d at 911. Such control would destroy the value of the statute of limitations as a statute of repose. *Lockett v. Owens–Corning Fiberglas,* 808 S.W.2d at 911.

This point may be denied for other reasons as well. Plaintiffs argue that their last item of damage was not sustained and capable of ascertainment until what they characterize as the diminished settlement of those claims. This point is necessarily premised on Plaintiffs' entitlement to damages for what Plaintiffs claim was the decreased amount of that settlement.

■■■■■ In a legal malpractice action, the plaintiff must plead and prove that the attorney's negligence was the proximate cause of the plaintiff's damages. *Rodgers v. Czamanske,* 862 S.W.2d 453, 458 (Mo.App.W.D. 1993). In the instant case, Plaintiffs alleged that they settled their claims against Carboline for $2.6 million and the return of disputed formulas. The only damage relating to the settlement which was alleged to have resulted from Defendants' conduct was as follows: "That the settlement ultimately obtained from the successor to Carboline by the attorneys retained by M & D and IMC after [Defendants'] dismissal as counsel did not fully compensate it for its economic losses and damage...."

*Williams v. Preman,* 911 S.W.2d 288 (Mo. App.W.D.1995), involved a malpractice suit against an attorney based on negligent representation in a bankruptcy proceeding. Part of the damages claimed was the amount plaintiff paid to settle a creditor's claim. In holding that the settlement was not compensable in that case, the court said: "In legal malpractice cases, it is required that plaintiff plead and prove that but for the attorney's negligence, the result of the underlying proceeding would have been different." *Id.* at 295. The court made it clear that settlement of an underlying claim after notice of an attorney's alleged negligence creates speculation concerning the claim's true merit, which must be justified if the client attributes the loss to the attorney. *Id.* at 297. The thrust of a claim for damages based on a settlement is that, because of the negligence, plaintiff's underlying claim was damaged, thereby necessitating settlement to mitigate the damage. *Id.* The court said that otherwise:

> A plaintiff may be tempted to settle the underlying claim at any figure, believing that the responsibility for the damage will be passed on to the defendant at whatever the settlement figure may be. In such a case, then, the plaintiff must show what would have happened if the adversarial action had been tried rather than settled.

*Id.* See also *Heartland Stores, Inc. v. Royal Ins. Co.,* 815 S.W.2d 39, 42 (Mo.App.W.D. 1991).

Given its broadest possible interpretation, the petition in the instant case alleged only that because of Defendants' negligence, the amount obtained in settlement was insufficient to fully compensate Plaintiffs. Plaintiffs did not allege any theory of justification for the settlement of the claim against Carboline. Likewise, there was no pleading that settlement was necessary in order to mitigate the damage caused to the claims by Defendants' acts and omissions. They did not, therefore, plead sufficient facts to state a claim for damages flowing from the settlement in keeping with the principles of *Williams v. Preman.* 911 S.W.2d at 295–97.

■■■ Because our review of a summary judgment is *de novo,* the trial court's order may be affirmed on an entirely different basis than that posited in the trial court. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d at 387–88. If a summary judgment is sustainable on any theory, it will be affirmed. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 243–44 (Mo. banc 1984); *Hopmeier v. First Am. Title Ins. Co.,* 856 S.W.2d at 389; *Estate of Cass,* 753 S.W.2d 632, 634 (Mo.App.S.D.1988). Defendants' motions for summary judgment did not specifically raise the issue of the failure to sufficiently state a claim for damages flowing from the settlement. That failure does

not, however, prevent us from affirming a summary judgment on that basis. *Heintz v. Swimmer,* 811 S.W.2d 396, 399 (Mo.App.E.D. 1991).

Point II is denied.

## POINT III

In their third point, Plaintiffs contend that the summary judgment was error because Plaintiffs alleged sufficient facts of improper conduct to show that Defendants should be equitably estopped from raising the statute of limitations as a defense or § 516.280 should prevent the running of the statute. Section 516.280 states:

> If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented.

Under this statute, fraudulent concealment of a cause of action may toll a statute of limitations. *See Smile v. Lawson,* 435 S.W.2d 325, 327 (Mo. banc 1968). Additionally, a defendant may be estopped by his conduct from claiming the statute of limitations as a defense where his conduct induced the plaintiff to delay bringing the suit until after the expiration of the statute. *Sugent v. Arnold's Estate,* 340 Mo. 603, 101 S.W.2d 715, 718 (1937).

In determining whether there was fraudulent concealment which tolls the statute of limitations, a pivotal issue is when plaintiffs realized they had a cause of action. *Tayborn v. Burstein,* 748 S.W.2d 824, 826 (Mo.App.E.D.1988). Fraudulent concealment is inapplicable if a plaintiff knows or should have known he had a cause of action. *Miller v. Guze,* 820 S.W.2d 576, 578 (Mo.App. E.D.1991). As discussed above, Plaintiffs had knowledge of their cause of action no later than August, 1985.

A court will seldom find that a party is estopped to plead the statute of limitations unless that party made positive efforts to avoid the bringing of suit against him or misled the claimants. *Dixon v. Shafton,* 649 S.W.2d at 439. Plaintiffs argue that they alleged in their petition conduct which would justify application of estoppel. They did not, however, come forward, in response to the motions for summary judgment, and show the existence of a genuine dispute in this regard. They could not accomplish that by relying on the allegations of their petition. Rule 74.04(e); *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d at 381. Additionally, even the conduct upon which Plaintiffs rely would not have prevented the commencement of this suit because Plaintiffs knew of their complaints against Defendants, and that they had sustained what they contend was damage by 1985. *See Miller v. Guze,* 820 S.W.2d at 578.

Point III is denied.

## POINT IV

Plaintiffs' final point on appeal is as follows:

> The trial court erred in granting summary judgment in favor of Respondents because summary judgment is proper only where the motion for summary judgment show[s] that there is no genuine issue of material fact, in that there existed genuine issues of material facts surrounding the issue of the accrual of Appellants cause of action against Respondents.

Defendants correctly point out that this point is deficient. Rule 84.04(d) requires that a point relied on "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978); *Miller v. Guze,* 820 S.W.2d at 577. Plaintiffs fail to state wherein or why material facts existed which would make summary judgment improper. A point relied on which violates Rule 84.04 preserves nothing for appellate review. *Bentlage v. Springgate,* 793 S.W.2d 228, 229–31 (Mo.App.S.D. 1990).

Nevertheless, an appellate court may, in its discretion, review for plain error which causes manifest injustice or miscarriage of justice, if the contentions can be understood from the argument section of the brief. *See Great Southern Sav. & Loan*

*Ass'n v. Wilburn,* 887 S.W.2d 581, 583 (Mo. banc 1994). Our review fails to disclose the existence of plain error.

Point IV is denied.

MONTGOMERY, P.J., and BARNEY, J., concur.

## ON MOTION FOR REHEARING BEFORE THE COURT EN BANC OR, IN THE ALTERNATIVE, APPLICATION FOR TRANSFER TO THE MISSOURI SUPREME COURT

Plaintiffs have filed a Motion For Rehearing En Banc as well as an Application For Transfer in which they allege several reasons why this case should be reheard by the court en banc or transferred to the Supreme Court of Missouri. Such motions are without merit and are denied. In so ruling, we note that with their Motion For Rehearing, Plaintiffs have attached documents which are not properly a part of the record before this court. These include documents which were the subject of a prior Motion to Supplement the Record which was denied by this court.

We feel that it is appropriate to respond to one of the allegations contained in the Motion For Rehearing En Banc. Plaintiffs allege that a statement made by the court at page 5 of the slip opinion was factually inaccurate. That statement is as follows:

On June 24, 1985, Plaintiffs entered into a written contingent fee contract with attorneys in Springfield. During the discussions, the Springfield attorneys discussed with Mr. Davis the possibility of a malpractice suit.

One of the paragraphs of Wolff's amended motion for summary judgment alleged:

In June of 1985, plaintiffs hired new attorneys, namely, Harrison, Tucker & Hyde; and those attorneys discussed with Harvey Davis the possibility of a malpractice action against defendant Wolff. (Paragraph L on page 5 of the affidavit.)

Plaintiffs' response to that motion was as follows:

Plaintiffs admit that in June of 1985 they hired Harrison, Tucker & Hyde, *and* admit that they discussed the possibility of a malpractice action against defendant Wolff, *and* admit that Tucker testified as claimed in Paragraph L on page 5 of Wolff's affidavit, but point out to the court that Tucker did not state when he made his statement. Plaintiffs state that the Tucker and Harrison firm did not tell Plaintiffs until a few months before the scheduled date of trial in October of 1989 that Defendants' actions diminished Plaintiffs' ability to negotiate for a higher settlement or get a higher judgment. [Emphasis added.]

Likewise, Plaintiffs refer us to the affidavit of Harvey Davis filed in response to the motions for summary judgment in which he stated:

That the Harrison, Tucker & Hyde firm did not advise him until just prior to the months immediately preceding the settlement of the underlying actions that Defendant's conduct would diminish his ability to negotiate a higher settlement or get a higher judgment.

Plaintiffs' response admits that they discussed the possibility of a malpractice action against Defendant Wolff. Their claim that they were not told by the new law firm that Defendants' actions diminished their ability to negotiate for a higher settlement or get a higher judgment until just months before the trial date is not inconsistent with having previously discussed the possibility of a malpractice action. In any event, the statement contained in this court's opinion about which complaint is made was not determinative of any point on this appeal.

Plaintiffs' Motion For Rehearing En Banc and Application For Transfer are denied.